ZELLNER *et al.*, executors, *v.* MOBLEY *et al.*

Where one delivered cotton to another and took the usual warehouse receipt for it, and subsequently assigned the receipt to a third person to secure the payment of a note bearing usurious interest, it was error to award a nonsuit against such third person in an action of trover by him against the giver of the receipt, brought after demand for the cotton and refusal to deliver it. The giver of the receipt was the bailee of him to whom it was transferred, and in whom the title to the cotton was thereby vested.

(a) The title of the transferee, though void as against the maker of the note, is not so as to the giver of the receipt.

(b) If the giver of the receipt can show that he claims the cotton under the maker of the note or has an interest in it derived from him, he may be allowed, so far as necessary to protect that interest, to make the question as to the title of the payee of the note being void.

March 31, 1890.

Trover. Title. Usury. Bailments. Nonsuit. Negotiable instruments. Privity. Parties. Pleadings. Before Judge BOYNTON. Monroe superior court. February term, 1889.

Reported in the decision.

G. J. Wright, by brief, for plaintiffs.

R. L. Berner and W. D. Stone, for defendants.

Simmons, Justice.

It appears from the record in this case that Watson carried two bales of cotton to the warehouse of Mobley and stored them therein, taking the usual warehouse receipt therefor from Mobley. Subsequently Watson borrowed $91 from Head, giving his note therefor, payable on demand, with interest at the rate of twelve per cent. per annum, and assigned in writing the warehouse receipt to Head to secure the payment of said note. Head demanded the cotton of Mobley, and he refused to deliver it; whereupon Head brought his suit against Mobley and Maynard, alleging a conversion of the cotton by them. It appearing on the trial that the note given by Watson to Head to secure which the cotton receipt was assigned to Head, was infected with usury, the court upon motion of defendants' counsel nonsuited the plaintiff, upon the ground that the title to the receipt was void and the plaintiff could not recover. To this decision the plaintiff excepted.

We think the court committed error in awarding a nonsuit upon that ground. Under our code, §2244, when Watson assigned this receipt to Head, the assignment vested the title in Head; and when Watson delivered the receipt to Head, he thereby delivered possession of the cotton to Head. A warehouse receipt is not in a technical sense like a bill of exchange or a negotiable instrument; it merely stands in the place of the property it represents, and delivery of the receipt has the same effect in transferring the title to the property as the delivery of the property. Bank v. Walbridge, 19 Ohio State, 419. When by a warehouse receipt it is agreed to deliver the property to any one to

whom the receipt may be endorsed (as to one or his order), symbolical delivery of the property may be effected by a transfer of the receipt, and the warehouseman in such case becomes the bailee to such transferee. Gill v. Frank, 12 Oreg. 507; Hale v. Milwaukee Dock Co., 29 Wisc. 482; Allen v. Maury, 66 Ala. 10; Gibson v. Stephens, 8 How. 384; Newmark on Sales, §216. Head, then, being the owner of the receipt issued by Mobley, and being in possession of the cotton, Mobley became his bailee, and it was his duty to deliver the cotton to Head upon demand, unless he could show some legal reason for his refusal,—of which we will speak presently. A person having had possession of personal property has the right to recover it in an action on his possession, unless the defendant can show a better title. Head being in possession of the property, as we have already shown, had a right to recover it from Mobley, unless Mobley had shown a better title in himself; but Mobley did not show any title in himself, nor undertake to do so, and therefore Head should have been allowed to recover the property or its value; and awarding a nonsuit was error.

Mobley insists, however, that Head's title to the cotton, being infected with usury, was void, under our code, §2057(f), which declares that "all titles to property made as a part of an usurious contract, or to evade the laws against usury, are void." This would be true as between Head and Watson, or any other person in privity with Watson. This statute was enacted as a penalty against the usurer, and for the protection of the borrower or his privies in blood or estate; and all titles infected with usury are, as between the usurer and the borrower or his privies, void; and as between these persons, no court will give them validity. We cannot see, however, what right third persons who have no interest in the matter have to invoke this statute as against the usurer. It is a well-settled principle

that the plea of usury is a personal one, and that no one can plead it but the borrower or his privies. Mr. Tyler, in his work on Usury, p. 403, says: "As a general proposition, it may be affirmed that no usurious transaction will be upheld by the court, and that in no instance can the holder of a usurious security succeed in a direct attempt to enforce it. But this is not the universal rule, and cannot be said to be correct under all circumstances and between all parties. The doctrine is well-settled that the defence of usury can only be taken by a party to the usurious agreement, or persons representing him as privies in blood or estate. A stranger cannot set up usury as a defence to an action. . . It is in all these cases the party who owes the debt, and who devotes his property to pay it, that can alone set up the defence of usury. If for any reason— his desire to avoid litigation, his pride of character, or his conscientious sense of justice—he may be induced to waive his legal rights and to satisfy a demand, he is at liberty to do so, although it may be obnoxious to the defence of usury. And whenever he sees fit not to set up the defence of usury against such a demand, and makes provision for its payment, no stranger, though he be agent or trustee, who by express or implied agreement has assumed the agency of making this payment on behalf of the debtor who furnishes the funds for that purpose, can put the funds in his pocket and set the holder of the demand at defiance. These principles are well-settled by a large number of authorities, a few of which need only be examined." See also Jones on Mortgages, §644. A title may be absolutely void between certain persons and not void as between others. A fraudulent sale is void as to creditors; it would only be voidable as between buyer and seller. "So it may be said that in many cases where a transaction is declared void in terms by a rule of the common law, or

even expressly by statute, where the obvious intent of the rule or statute is to secure and protect the rights of others, the construction of law is that it is voidable so far that it shall not operate to defeat or impair those rights. A deed of this character is not a dead letter, but can be avoided by the injured person only, and at such time and in such manner as may be necessary to preserve and secure those rights. In other respects, as we have seen, it has its natural effects." Wait on Fraudulent Conveyances, §445 et seq. So while this title of Head was void on account of usury, as between him and Watson and Watson's privies, it was not void as between Head and a third party not interested in the matter. A third party who has no interest in the title, as we have seen, will not be allowed to make the question. Watson and his privies alone can make the question that the title is void on account of usury. The record not disclosing that Mobley claimed under Watson, or that he had any interest in the cotton derived from Watson, we hold that he had no right to make the question as to Head's title being void, and that the nonsuit awarded on this ground was error.

Of course, if upon the next trial Mobley shows that he claimed the cotton under Watson, or that he had an interest in the cotton derived from Watson, he would be allowed to make the question so far as it would be necessary to protect that interest; and if Mobley shows this and Maynard shows that he bought from Mobley, he would have the same rights that Mobley has. This case differs from Jaques v. Stewart, 81 Ga. 81. In that case Stewart and Jaques both claimed title under Gordon. This fact does not appear in the report, as it should, but it is in the record of the case, and the decision was predicated upon it.        Judgment reversed.