## SCOTT, administrator, *v.* WILLIAMS.

1. While titles to property made as a part of a usurious contract
are void, the right to set up the usury and have the convey-
ance declared void rests only with the maker and his personal
representatives and privies. A stranger in interest will not
be heard in an attack on a title claimed to be void for usury.
'2. Where a borrower conveys absolute title to land as security
for a debt tainted with usury, and, for a good or valuable con-
sideration, procures a bond for title to be executed by the
grantee in favor of a third person, conditioned to convey such
land to the obligee on payment of the original debt, such
borrower, on the execution of these contracts, has divested
himself of the right to redeem the land in any event, and
would not afterwards be heard to avoid the deed so given.
'(*a*) If the borrower, under the circumstances stated above, could
not have the deed declared void, his personal representative
could not do so.

Argued November 16, 1896. Reargued January 29,—Decided March 12, 1897.

Equitable petition. Before Judge Fish. Dooly superior
:court. May 16, 1896.

A demurrer to the petition of Scott as administrator of the
·estate of J. A. Perry against Williams, was sustained, and
plaintiff excepted. The petition alleged that up to and on
February 23, 1893, Perry was the owner of a described lot
·of land in Dooly county. On said day, for the purpose of
'.securing a debt, Perry made to E. B. Lewis what purported
to be an absolute deed of conveyance to said land, but which
was nothing more than a security for a debt. This deed ex-
pressed that the consideration therefor was $610.18, and it
was duly recorded. At the time of the execution of this con-
veyance Lewis made to S. A. T. Perry (the wife of J. A.
Perry) a bond for titles to convey to her the land upon the
payment of said money. Petitioner cannot say what the mo-
·tive of the parties was to have this bond made in the name

of Mrs. Perry, but alleges that it was the distinct under-
standing that the land was to be reconveyed upon the pay-
ment of the amount of the indebtedness for securing which
the deed was made. In said transaction and deed and debt
and as a part of said debt there was usury charged and taken
by Lewis to the amount of $18 or other like sum. Peti-
tioner's intestate having died, his wife transferred to de-
fendant her rights under and interest in said bond. She
and defendant were very friendly, lived in the same neigh-
borhood, and their business dealings were known the one to
the other, especially the subject-matter of this suit; and
they both well knew that said usurious contract had been
made, and that the deed was tainted with usury and there-
fore void, and this fact was especially well known to defend-
ant when said transfer was made and at the time the deed
hereinafter mentioned was made to defendant, and at said
times he knew all the facts above mentioned. In 1893
defendant paid Lewis the amount of said debt, and under
the transfer of the bond had Lewis make him a deed to the
land, which expressed that it was upon the consideration
of said sum of $610.18, which deed was duly recorded.
Under this deed, notwithstanding he had been warned, be-
fore he went into the transaction and had the bond trans-
ferred to him and before he paid any money, that he
was going into a lawsuit if he bought the land, because
the original deed was made for security and was tainted
with usury and therefore void, defendant did the things
above mentioned and went into possession of the land,
and is now using it and enjoying the rents, and denies
possession of it to petitioner. The land is much more
valuable than the amount of the debt, and if petitioner's
intestate had lived he would have paid the debt. In law
and equity the title to the land is in said estate, and the
paper titles above mentioned are a cloud thereon. Peti-
tioner tenders to defendant the true amount of principal and
legal interest of the indebtedness which the first mentioned

.deed was made to secure, with all lawful interest. He prays that defendant be required to produce all the muniments of title that he has to the land, and that the same be cancelled; for judgment against defendant for the damages he as such administrator and the estate of his intestate has sustained by reason of the acts of defendant; for judgment for the land, putting the title in him as administrator and in said estate, upon the payment of the amount tendered as above mentioned; for injunction, etc.

The demurrer was upon the grounds, that the petition shows no title in the estate of said Perry, but shows title out of said Perry during his life; and that the facts set forth work an estoppel, and petitioner will not be heard to deny the title of defendant to the land.

*Busbee, Crum & Busbee,* for plaintiff.
*Littlejohn & Thomson,* for defendant.

Little, Justice.

1. The questions to be decided in this case arise on exceptions to the judgment of the court below in sustaining a demurrer to the declaration of the plaintiff, and involve the application of certain principles in the law of usury. Our Civil Code, §2892, declares: "All titles to property made as part of an usurious contract, or to evade the laws against usury, are void." The record discloses that the title in question was made to secure a debt infected with usury; and the plaintiff, invoking this provision of our law, insists on a literal application of its precepts, while the defendant contends that such title is not ipso facto void. This is the question we have to decide.

Inasmuch as there is no qualification in the statute, we should consider first what is its effect; and we quote the language of an eminent writer, that "when the plain and unequivocal language of the law is rigidly followed, there are, to be sure, a few cases of hardship; but let it be once understood that statutes are not to be limited in their opera-

tion by over refined and artificial interpretations.   Men are able to understand and govern themselves by the law of the land, and an incalculable amount of legal controversy is thus avoided."   It may here be referred to that the statutes of the several States on the question of the effect of usury on contracts vary; in some instances, the statute declares that contracts founded in usury are void; in others, that such contracts are valid in the hands of a bona fide holder, etc. But it is unnecessary to pursue this branch of the investigation further, because our statute, when referring to titles infected with usury, declares the same void, and we construe these words to mean just what they say: they are void. When?  A deed to a lot of land, though infected with usury, does not usually bear on its face any evidence that it is tainted with usury; it is prima facie a conveyance of such title as the grantor could convey; the defect in such deed is not patent; it does not rest on the terms of it, but must be shown by extrinsic proof, which goes to the consideration expressed.   Therefore, on its face and as a natural effect of its terms, the deed conveys the title of the grantor to the premises described in the instrument, and such will be its effect until, on an examination of the consideration, it is ascertained that the consideration was usurious.   Then, and not till then, will the court declare the apparent conveyance not to be a conveyance because of the vice in the consideration.   Such conveyance is to be accredited good until the question is made and it is adjudicated to be bad.

Now, who can cause such or any other adjudication of that conveyance to be made?   The answer is plain under the law: not a stranger to it, but only one who has an interest adverse to it.   So that, deciding as we do that titles to property infected with usury are void, the practical effect of such decision is nugatory, until we further consider and determine who may have them so declared.   The doctrine is well settled that the defense of usury can only be taken by the party to the usurious agreement, or persons representing

him as privies in blood or estate. A stranger cannot set up usury as a defense to an action. Tyler on Usury, p. 403. The plea of usury is a personal one, and no one can plead it but the borrower and his privies. *Ryan* v. *Am. Freehold Mortgage Co.*, 96 *Ga.* 322; *Zellner* v. *Mobley*, 84 *Ga.* 749. A title may be absolutely void between certain persons, and not void as between others. 84 *Ga.* supra; see also Jones on Mortgages, §644. It may be said that in many cases where a transaction is declared void in terms of the common law, or even expressly by statute, where the obvious intent of the rule or statute is to secure and protect the rights of others, the construction of law is, that it is voidable so far that it shall not operate to defeat or impair those rights. A deed of this character is not a dead letter, but can be avoided by the injured person only, and at such time and in such manner as may be necessary to secure those rights; in other respects, it has its natural effects. Wait on Fraudulent Conveyances, §445 et seq. Many other citations could be made, establishing these principles, but it is deemed unnecessary to further elaborate them. So that, while we hold that titles to property made as part of an usurious contract are void, we further hold that the right to have the same so declared rests with the borrower, his personal representatives and privies. The case of *Jaques* v. *Stewart*, 81 *Ga.* 81, is not to be taken as an authority against the correctness of the principles here ruled, although a casual reading of that case would possibly lead to that conclusion. There, the record shows both parties claimed title from the same source, and the contest between the parties was, which particular bill of sale made by Gordon, the one to Stewart, or the one to Jaques, conveyed the title, and this court held that Jaques, when the bill of sale made by Gordon to Stewart was offered as showing title in the latter, might, in defense of the title conveyed to him subsequently by Gordon, show that the first bill of sale was infected with usury and therefore void; in other words, that Gordon, the borrower, might

set up the fact of usury and have the conveyance to Stewart declared void, and that Jaques was his privy in estate, and, being such, the right to do so inured to him. These facts do not appear in the report of the case, but are shown in the original record of file here, and formed the basis for the opinion rendered.   84 *Ga.* 750.

2. It would seem conclusively to follow from the above reasoning, that a stranger in law or in interest would not be heard to attack a title as void because infected with an usurious consideration; indeed we can conceive of circumstances where even personal representatives, or privies in blood or estate, could not do so.   This court held in the case of *Zellner* v. *Mobley*, 84 *Ga.* 746, quoting from Mr. Tyler, that, referring to the borrower, "If for any reason—his desire to avoid litigation, his pride of character, or his conscientious sense of justice, he may be induced to waive his legal rights and to satisfy a demand, he is at liberty to do so, although it may be obnoxious to the defense of usury." If a borrower may exercise his personal privilege and pay off a debt infected with usury, or refuse to take advantage of this plea, preferring for such reasons as may actuate him to recognize and settle such usurious contract, no one can deny him the right, and when he chooses to do so and has done so, then neither his personal representatives nor privies can reopen the question or revise his act.   In the case now under consideration, it is admitted that Perry, the intestate, made to Lewis an absolute deed to real estate to secure the payment of a debt infected with usury.   Under our law, this title was void, and under any view of the law, Perry would have the right to have it so declared; and if nothing more appeared, the personal representative of Perry and his privies in blood or estate would succeed to the same right. But more does appear.  At the time of the delivery of this deed, Perry, the intestate, made a contract with Lewis by which the latter executed a bond conditioned to convey to

Mrs. S. A. T. Perry (wife of the intestate) the land con-
veyed to him, on payment by her or her assigns of the debt
due by Perry. Thus it appears that Perry divested himself
of the right to redeem the land and placed such right in a
third party. The record is silent as to the consideration
which moved this last agreement. The obligee, however,
being the wife of the debtor, the contract could be sup-
ported as a gift. In any event, Mrs. Perry accepted and
held the bond. We are not called on to decide whether
Mrs. Perry would have the right to set up usury in the
deed to her obligor; that question is not involved. After
the death of Perry, Mrs. Perry transferred and assigned
her bond for titles to Williams, who paid the debt of
Perry to Lewis, received from the latter a conveyance of
the land and entered into possession. Now, Scott, the
administrator of Perry, files his petition, alleging the facts;
claiming that the deed from Perry to Lewis is infected
with usury and void, that Williams had notice of the
usury before he took the conveyance from Lewis; and he
prays damages and judgment for the land and that title be
vested in him as administrator on payment of the original
principal in the debt owing by Perry to Lewis, with lawful
interest thereon.

Under the view which we take of the case, the adminis-
trator of Perry is not entitled to any of the relief prayed for
by him; nor in our opinion can he bring up the question of
usury in the original transaction between Perry and Lewis.
When Perry made the deed to Lewis, he procured the latter
to make a bond for titles to a third person, and the assignee
of this third person complied with the terms of the bond,
paid the money and received conveyance. Perry had a
right to redeem. He chose, however, for sufficient reasons,
to part with his right, and when he did so, he had no further
right or interest in the land. *Polhill* v. *Brown*, 84 *Ga.*
338; 9 Paige's R. 137. If after these transactions Perry

could not open the matter and recover the land, his personal representatives could not.

*Judgment affirmed. All the Justices concurring, except Fish, J., disqualified.*