LANKFORD *et al. v.* HOLTON *et al.; et vice versa.*

Nos. 12458, 12463.   OCTOBER 15, 1938.   REHEARING DENIED NOVEMBER 19, 1938.

*W. C. Lankford, Little, Powell, Reid & Goldstein,* and *B. D. Murphy,* for Lankford *et al.*

*B. G. Oberry Jr.* and *R. A. Moore,* contra.

JENKINS, Justice. ■ Every applicant for the benefits under the land-registration act (Ga. L. 1917, p. 108; Code, § 60-101 et seq.) must stand on the strength of his own application, and not upon the weakness of his adversary's title. In proving such title as will entitle him to registration and a decree in his favor, the same rules of law apply as in suits for the recovery of possession of land by ejectment or statutory complaint for land. *Thomasson* v. *Coleman,* 176 *Ga.* 375 (167 S. E. 879) ; *Rock Run Iron Co.* v. *Miller,* 156 *Ga.* 136, 141 (118 S. E. 670) ; *Smith* v. *Board of Education,* 168 *Ga.* 755 (2) (149 S. E. 136).

■ The applicant in her petition claimed the right of registration by virtue both of described deeds and of adverse possession thereunder. However, the evidence before the examiner failed to establish a prescriptive title in her, and she disclaimed any such claim of title, and did not except to the finding that such title had not been shown. Her right to registration, therefore, depends upon title as shown by the deeds under which she claimed.

■ Both the petitioner and the defendants claimed under a common grantor, who in 1911 executed to a grantee, since deceased, a deed to secure a stated debt of $15,000, due in 1917, which the defendants attacked as void for usury. The title of the common grantor under deeds into him and prescription thereunder was proved and undisputed. Accordingly, the controlling factor in most of the questions raised is the validity of the security deed, under which the applicant as transferee obtained a sheriff's deed by virtue of its foreclosure, with related questions as to the right of the defendants to attack the security deed and the admissibility of evidence thereon.

■ Under the law as it existed before the act approved August 18, 1916 (Ga. L. 1916, p. 48; Code, § 57-112), a deed to secure debt, infected with usury, and purporting to convey title to the lender, was void and ineffectual to pass the title. *Liles* v. *Bank of Camden County,* 151 *Ga.* 483 (107 S. E. 490), and cit. The new law, ameliorating this penalty, not being retroactive (*Long* v. *Gresham,* 148 *Ga.* 170 (2), 173, 96 S. E. 211), and the transaction here in question occurring before the new act, the validity of the instrument and the rights of the parties must be determined by the old law and decisions thereunder.

■ Under the former law, the grantee in a security deed tainted

with usury could not, as against the grantor, convey a good title, even to one who took bona fide, for value, before maturity, and without notice of the usury. *Wacasie* v. *Radford,* 142 *Ga.* 113 (2) (82 S. E. 442) ; *Beach* v. *Lattner,* 101 *Ga.* 357 (2), 366 (28 S. E. 110) ; *Pottle* v. *Lowe,* 99 *Ga.* 576 (27 S. E. 145, 59 Am. St. R. 246).

■ Under the old usury law, although the defense of usury was a personal one, which no one could plead except the borrower and his privies, where both parties claimed title from the same source (*Scott* v. *Williams,* 100 *Ga.* 540, 544, 28 S. E. 243, 62 Am. St. R. 340; *Zellner* v. *Mobley,* 84 *Ga.* 746, 750, 11 S. E. 402, 20 Am. St. R. 390; *Peoples Bank* v. *Fidelity Loan & Trust Co.,* 155 *Ga.* 619 (2, 3), 117 S. E. 747), and the plaintiff sought to show title in himself by a deed or other writing, the defendant had the right to attack such instrument and show that it was not a title, but was void for usury or other cause; and this he could do without filing a plea to that effect. *Jaques* v. *Stewart,* 81 *Ga.* 81, 83 (6 S. E. 815).

■ Under the old law, if the debt secured by the deed was reduced to judgment, without any plea of usury by the debtor or with an adverse verdict and judgment upon such plea, the debtor and his creditors, even holding judgments, in the absence of fraud, want of jurisdiction, or other equities, were estopped from attacking the deed for usury. *Miller* v. *Parker,* 133 *Ga.* 187 (1), 189 (65 S. E. 410) ; *Bush* v. *Bank of Thomasville,* 111 *Ga.* 664 (3), 667 (36 S. E. 900) ; *Owens* v. *Gibson,* 74 *Ga.* 465. But where both parties claimed under the grantor in the usurious security deed, the fact that the creditor had reduced his debt to judgment, without any successful defense of usury, did not estop or preclude one who claimed under a conveyance from the debtor, made before the judgment, and who was not a party to the suit in which the judgment was obtained. *Ryan* v. *American Freehold Land Mortgage Co.,* 96 *Ga.* 322, 324 (23 S. E. 411).

(*a*) Under the laws controlling the transaction of the security deed in question, the defendants, claiming under the grantor, were not estopped or precluded from attacking such deed as usurious by the fact that some of the instruments under which they claimed contained agreements to assume or pay debts or claims "justly due" by the original grantor in the security deed, or liens against

the property, since a usurious debt, being founded upon an illegal and immoral consideration (*Bailey* v. *Lumpkin,* 1 *Kelly,* 392, 406; *Laramore* v. *Bank of Americus,* 69 *Ga.* 722; *Angier* v. *Smith,* 101 *Ga.* 844, 28 S. E. 167; *Atlanta Savings Bank* v. *Spencer,* 107 *Ga.* 629, 636, 33 S. E. 878; In re Hotel Equipment Co., 297 Fed. 842), would not be one "justly due;" and since a void usurious security deed would not constitute a valid and therefore actual lien. See National Loan Co. v. Stone (Tex. Civ. App.), 46 S. W. 67; 27 R. C. L. 289; 66 C. J. 325.

(*b*)   Under the preceding rulings, notice being immaterial, the fact that the defendants, claiming under conveyances from the original grantor in the security deed before any judgment against him, had constructive or even actual notice of the alleged invalid deed, would not estop or preclude them from attacking it, where the petitioner sought a registration of title thereon.

(*c*)   Nor in such a proceeding would the defendants in possession be estopped or precluded by mere lapse of time from attacking the validity of the deed when relied upon by the petitioner for registration.

■   "Grounds of a motion for new trial based upon the admission of evidence will not be considered by this court unless the grounds show what are the objections to the evidence, and that these objections were made when the evidence was offered. Nor will the reason or reasons why certain evidence should not have been admitted be considered here, unless such reasons appear to have been urged before the trial judge and at the proper time." *Langston* v. *State,* 153 *Ga.* 127 (111 S. E. 561); *Grace* v. *McKinney,* 112 *Ga.* 425 (2) (37 S. E. 737); *Lamkin* v. *Clary,* 103 *Ga.* 631 (5), 639 (30 S. E. 596); *Harris* v. *State,* 156 *Ga.* 582 (119 S. E. 519).

(*a*)   "The provision of the [Code, § 38-1603, par. 1], to the effect that the opposite party in a suit instituted or defended by an indorsee, assignee, or transferee of a deceased person shall not be admitted to testify in his own favor against the deceased person as to transactions or communications with such person, refers only to the immediate indorsee, assignee, or transferee of the deceased person." *Purvis* v. *Raste,* 144 *Ga.* 16 (3) (85 S. E. 1012); *Castleberry* v. *Parrish,* 135 *Ga.* 527 (5) (69 S. E. 817). It has therefore been held that in a suit to recover land, brought by one

claiming as heir at law of a deceased person who held a conveyance from a former owner, where the defendant claims by virtue of a chain of conveyances beginning with such former owner, the former owner is not incompetent to testify as to transactions between her and the deceased person under whom the plaintiff claims as heir. *Goddard* v. *Boyd,* 144 *Ga.* 18 (85 S. E. 1013).

(*b*) By the express language of the Code, § 38-1603, par. 5, the incompetency of an "agent or attorney at law of the surviving . . party" to testify as to transactions with a deceased person exists only where the witness was such agent or attorney "at the time of the transaction testified about." In order for the inhibition of § 38-1603, par. 4, to exclude testimony as to such transactions by a "person interested in the result of the suit," the interest must not be mere personal bias or based on near relationship, even such as husband and wife, but must be founded upon or reducible to pecuniary gain. *Blount* v. *Beall,* 95 *Ga.* 182 (2), 188 (22 S. E. 52) ; *Jackson* v. *Gallagher,* 128 *Ga.* 321, 324 (57 S. E. 750), and cit.; *Lawson* v. *Prosser,* 146 *Ga.* 421, 423 (91 S. E. 469) ; *Belcher* v. *Craine,* 135 *Ga.* 73 (4) (68 S. E. 839) ; *Dean* v. *Dean,* 13 *Ga. App.* 798 (80 S. E. 25) ; *Morris* v. *Shaw,* 44 *Ga. App.* 222 (5) (160 S. E. 820). Nothing was held to the contrary in *Dorminy* v. *Russell,* 182 *Ga.* 635 (186 S. E. 679), where not only was it admitted in judicio that the husband, who sought to testify for his wife, was her general agent, but it appeared that he himself had a pecuniary interest in the result of the suit.

(*c*) Under the rulings made in this division of the opinion, the testimony of the original grantor in the security deed, under whom all the parties in this case claimed, was properly admitted, and should have been considered, as it was, by the examiner, who merely held it to be "insufficient evidence to void the security deed." Not only were there no objections to the admission of this evidence on grounds urged in this court, the objections before the examiner being that the witness could not "go behind" the judgment and execution rendered against him on the security deed, and that the evidence was "too vague and indefinite" as to amounts and circumstances of payment to "be of any probative value to sustain the allegation of usury, even if [the present defendants] were either necessary or proper parties to the suit on the note

and security deed," and there being no exception on any ground to the admission of the evidence, but it further appeared that the petitioner was not the "immediate" assignee or transferee of the deceased grantee in the security deed, so as to entitle her to claim the benefit of the alleged disqualification, and it in no wise appeared either that the witness was the "agent or attorney at law" of any of the defendants "at the time of the transaction testified about," or that he had a pecuniary interest in the outcome of the suit which precluded him from testifying.

■ Direct and positive testimony, as distinguished from testimony circumstantial, opinionative, or actually negative in character, which is given by an unimpeached witness as to the existence of a fact apparently within his own knowledge, which is not in itself incredible, impossible, or inherently improbable, and which is not contradicted directly or by proof of facts or circumstances that could be taken as incompatible with such testimony, can not be arbitrarily rejected by a jury or other trier of the facts upon the mere surmise that it perhaps might not be in accord with the truth. In a case where the direct evidence is not all one way, or where there are proved facts and circumstances which could be taken as inconsistent with the direct positive testimony, the jury may always consider the relationship and the feeling of the witnesses toward the parties, as well as all the facts and circumstances of the case, including the witnesses' manner of testifying, their intelligence and number. *Georgia Railroad & Banking Co.* v. *Wall*, 80 *Ga.* 202, 204 (7 S. E. 639) ; *Central of Ga. Ry. Co.* v. *Wood*, 105 *Ga.* 499 (30 S. E. 933) ; *S. C. & Ga. R. Co.* v. *Powell*, 108 *Ga.* 437 (33 S. E. 994) ; *Ga. So. & Fla. Ry. Co.* v. *Sanders*, 111 *Ga.* 128, 129 (36 S. E. 458) ; *Western & Atlantic R. Co.* v. *Beason*, 112 *Ga.* 553, 556 (37 S. E. 863) ; *Patton* v. *State*, 117 *Ga.* 230 (5) (43 S. E. 533) ; *Frazier* v. *Ga. R. &c. Co.*, 108 *Ga.* 807 (33 S. E. 996) ; *Ga. So. & Fla. Ry. Co.* v. *Thompson*, 111 *Ga.* 731 (36 S. E. 945) ; *Taggart* v. *Savannah Gas Co.*, 179 *Ga.* 181 (175 S. E. 491) ; *Jones* v. *State*, 48 *Ga.* 163, 164; *Moore* v. *Dutson*, 79 *Ga.* 456 (4 S. E. 169) ; *Central Railroad &c. Co.* v. *Maltsby*, 90 *Ga.* 630 (16 S. E. 953) ; *Armstrong* v. *Ballew*, 118 *Ga.* 168 (2) (44 S. E. 996) ; *Gibbs* v. *State*, 8 *Ga. App.* 107, 108 (68 S. E. 742) ; *Neill* v. *Hill*, 32 *Ga. App.* 381 (2-a) (123 S. E. 30) ; *Jones* v. *Teasley*, 25 *Ga. App.* 784, 788 (105 S. E. 46) ; Penn. R. Co. *v.* Chamberlain, 288

U. S. 333 (3), 341 (53 Sup. Ct. 391, 77 L. ed. 819). Were this not the rule, in no case where relationship, feeling, or some personal interest of a witness might exist, would it ever be proper for the trial court to grant a nonsuit or direct a verdict, or for this court to grant a new trial on the ground that a contrary verdict was demanded. This rule is not in conflict with the ruling in cases such as *Whiddon* v. *Hall,* 155 *Ga.* 570 (6), 578 (118 S. E. 347), in which it was held: "It can not be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by direct evidence. The credit of this witness was for the jury," since the ruling went only so far as to hold that impeaching *direct* evidence is not necessary; and in this connection, in this and similar cases, it appeared that there were proved circumstances contradictory in character to the direct evidence, which the jury could weigh in determining the weight to be given it. The *Whiddon* case is further distinguishable by the additional holding therein, "Besides, there was some evidence" on the point in question.

■ On the essential issue as to whether the security deed was usurious, the grantor testified: "At the time this $15,000 was obtained from Mr. B. H. Tanner [the grantee in the deed], as a part and parcel of the transaction he required me to pay for the $15,000, not only the $15,000 mentioned in the loan deed, and 8 per cent. interest thereon, but an additional $1000 and interest thereon at 8 per cent.; in other words, required me to pay $16,000 and interest on $16,000 at 8 per cent. for $15,000 of money actually advanced. This was at the time and in connection with the $15,000 borrowed on the loan deed." On cross-examination, he testified: "I didn't pay the full amount of $1000. Later on there was an amount, less possibly $500, accepted in settlement of it. At that time it was settled with a great many other obligations." This testimony was uncontradicted.

(*a*) As was brought out on cross-examination, an amount in excess of lawful interest was not only charged but actually paid. Furthermore, since usury consists not only in "the reserving and taking" but in the "contracting to reserve and take" more than the legal rate (Code, § 57-102; and see also Code of 1910, § 3427), the fact that the agreed excess was compromised and settled for a less amount would not free the transaction from usury. *Marlin* v. *Johnson,* 84 *Ga.* 481, 486 (10 S. E. 1092, 8 L. R. A. 170).

(*b*) Under the preceding holdings, the testimony of the grantor being admissible, not being contradicted by either sworn testimony or facts and circumstances, and not being subject to rejection by the mere fact that the witness was the husband of one of the defendants and the brother-in-law and uncle of the other defendants, such testimony demanded findings that the transaction was usurious; that the security deed was void, and the sheriff's deed based thereon was ineffective to pass title as against the defendants; and that such instruments constituted no basis for registration of title in the petitioner, or in the intervenors who claimed under her. It was therefore error to overrule the defendants' exceptions of law and fact on these grounds to the report of the examiner, and to enter decrees in favor of such registration.

■ The land-registration act, Code, § 60-207, requires the applicant to set forth in the petition "when, how, and from whom [the land] was acquired, a description of the title by which he claims the land, and an abstract of title." With reference to the registration of title to three of the tracts under several deeds thereto from a city marshal and the city to the petitioner, based on executions and assessments by the city authorities for paving, curbing, and improving the street adjacent to part of the property, not only did the petition and abstract fail to include such deeds or claim registration thereunder, but several were executed during the pendency of the suit. For these reasons, the findings of the examiner and the decrees of the court could not properly be based on such instruments.

(*a*) Where a city marshal has levied an execution issued by the city authorities, and has executed a deed to the purchaser at the sale, "in the absence of statutory aid, the recitals in [such a] tax deed that the preliminaries of a valid sale . . were observed are not evidence of the facts recited." *Johnson* v. *Phillips, 89 Ga.* 286 (2), 288 (15 S. E. 368). This principle, now codified as § 92-4407, would apply equally to recitals in a marshal's deed, made under an assessment, execution, and sale for paving, curbing, or other city improvements. Accordingly, even if the petitioner could claim registration under unpleaded deeds from a city marshal and the city, and under deeds executed during the pendency of the case, she was in no event entitled to a finding and decree based thereon, where the only evidence as to the validity of the executions

and sales, and as to a proper compliance with the preliminaries necessary to render the deeds valid, consisted of recitals in such deeds and papers.

(*b*)  The land-registration act (Code, § 60-202), expressly provides that "for the purpose of this title no *tax deed* shall be treated as a muniment of title, or admitted in evidence, or considered by the examiner or the court as a conveyance of title, color of title, or claim of title, unless the same shall have been executed, delivered, and recorded more than seven years before the filing of the petition for registration of title of the land described in such deed." In *Georgia Railroad &c. Co.* v. *Decatur,* 137 *Ga.* 537, 540 (73 S. E. 830, 40 L. R. A. (N. S.) 935), it was said: "Though assessments for local improvements are not taxes within the meaning of the requirement of the constitution that taxes must be ad valorem and uniform, nevertheless assessments for local improvements, such as street paving . . are an exercise of the taxing power." See 44 C. J. 481.  Again, in *City of Brunswick* v. *Gordon Realty Co.,* 163 *Ga.* 636, 641 (136 S. E. 898), this court said: "By the great weight of authority a local assessment, levied in return for the benefits conferred upon the property assessed by the improvement for which the assessment is levied, is a *kind of tax.*"  "The city might, if it sees proper, raise money by direct taxation for the specific purpose of making street improvements; and the fact that by the method of assessment . . it imposes the burden upon the property owner whose property would be benefited by the improvement does not divest the proceeding of the city, *in issuing and levying the execution,* of its character as an exercise of the taxing power."  See, as to such assessments and procedure, Code, §§ 92-4201, 92-4401, 92-4402.  Although § 67-1701 (1), establishing liens, refers to "liens in favor of . . municipal corporations for taxes," and § 92-5708, fixing priorities, refers "to liens for taxes . . due . . any municipal corporation," and "taxes due to municipal corporations of the State," without any express reference to liens for city improvements of property, it was held in the *Gordon Realty Co.* case, supra, that "the lien upon the property in question . . [has] the rank of a tax lien."  The procedure in sales under executions for city improvements and the time for redemption therefrom also have been held to be controlled by the statutory rules applicable to ordinary city tax fi. fas.  *Hopkins*

v. *Chatham Bank & Trust Co.,* 174 *Ga.* 136 (162 S. E. 521) ; *Lewis* v. *Moultrie Banking Co.,* 36 *Ga. App.* 347, 348 (136 S. E. 554). Since the power to assess and to issue and levy execution for such improvements, the rank of the lien, the procedure and period of redemption in such a sale, are thus governed by statutes relating to city taxation, a deed issued under such an assessment must be construed as a "tax deed" within the intent and meaning of the land-registration act. Code, § 60-202. And since such deeds, made in this case to the petitioner, were not "executed, delivered, and recorded more than seven years before the filing of the petition," as required by that section, the petitioner, for this additional reason, was not entitled to registration based thereon, irrespective of other reasons which have been stated.

■ "In this State a bond for title is color of title, and the holder thereof may, through seven years adverse possession, acquire title against all persons, except his obligor, and the heirs, executors, and administrators of the latter." *Baxter* v. *Phillips,* 150 *Ga.* 498 (104 S. E. 196). The petitioner failing to show and disclaiming at the hearing before the examiner any prescriptive title, and the security deed on which her claim of title through the grantor therein essentially rested being void under the evidence, she was not entitled to prevail thereon against the defendant wife of such grantor, who claimed more than seven years adverse possession under color of title to three of the tracts sought to be registered, and an undivided half interest in the tract numbered 4, the remaining half interest being claimed by the defendant heirs of the deceased brother of the original grantor. The evidence showed that the security deed was executed in 1911 and matured in 1917; that the grantor therein executed a deed to a half interest in tract 4 to his brother in 1913, and a deed to the remaining properties in question to another person in 1915; that this purchaser executed a bond for title to the defendant wife in 1920; that the purchaser from the original grantor went into possession under his deed, and the defendant wife into possession under her bond for title, and possession under these instruments extended for more than seven years; that the petitioner obtained a judgment on her security deed and debt and a sheriff's deed thereunder in 1923; and that the petition was filed in 1928. The defendant wife, thus establishing under the evidence a good prescriptive title

to all of the property except the half interest in tract 4, showed such a title as she was entitled to register by virtue of the Code, §§ 60-202, 60-206, under her claim set up by amendment in the nature of a "cross-action praying for the title to be found" in her. As stated, the title existing in the common grantor at the time of his execution of the security deed to the petitioner's predecessor in title was proved without dispute. The heirs of the deceased brother, by virtue of adverse possession under the deed executed to him in 1913, likewise were entitled to registration of title to the one-half interest in tract 4. Since the intervenors acquired their rights under instruments subsequently executed to them by the petitioner, in 1928, 1932, 1933, and 1934, such rights, so far as shown by the evidence, were inferior to those of the defendants.

(a) While under the old usury law it was the rule that "before a borrower who has executed . . a [security] deed [void for usury could] have affirmative equitable relief" therefrom, such as cancellation or injunction, he "must pay or tender to [the] grantee the principal and lawful interest due to him" (*Liles* v. *Bank of Camden County,* 151 *Ga.* 483 (supra), and cit.), assuming without deciding that such a rule would be applicable to subsequent purchasers from the grantor-borrower, this would not prevent the defendants in this case from having their titles, acquired by prescription under their own color of title, registered in their cross-actions, since as to the security deed their defenses were only negative, and their affirmative prayers related to their claims of title, independently of such deed.

(b) Under the evidence, the security deed being void for usury, and having been in default since January 1, 1917, without exercise by the grantee of the right of entry and possession arising after such default, and the defendants' claim of adverse possession under their own color of title being in no wise permissive under the grantee in the security deed (see *Sweat* v. *Arline,* 186 *Ga.* 460, 197 S. E. 893, dealing with the law before the act of 1937 (Ga. L. 1937, p. 755), and citing and distinguishing *Tony* v. *Ledford,* 184 *Ga.* 856, 858, 193 S. E. 761; *Chandler* v. *Douglas,* 178 *Ga.* 11, 172 S. E. 54, and other cases, as to the right of subsequent purchasers from a grantor in a *valid* security deed to acquire prescriptive title against the grantee therein, *before default* and consequent right of entry and possession by the grantee), it was error for the examiner

to find, and for the court to approve the finding, that the conveyances to the defendants, "because of actual and constructive notice . . were all made and are subject to the title previously alienated" by the grantor to the grantee in the security deed, "and the title of those acquiring by virtue of same."

(c) The land-registration act provides that suit "shall be begun by a petition to the court by the person or persons or corporation claiming, *singly or collectively,* to own . . an estate in fee-simple in any land, whether subject to . . lesser estate, or not" (Code, § 60-203); and that any person may file "objections to the granting of the relief prayed for in the petition . . by filing in court an answer . . and the grounds of his objection; or he may file a cross-action praying that the title to the land, or *some interest therein,* be decreed to be in him, and registered accordingly." Code, § 60-206. Under these express provisions, all of the parties at interest being before the court, the fact that, as to the tract numbered 4, one defendant sought registration of an undivided half interest, and the other defendants registration of the other half interest, would not defeat the right of the defendants to registration of the titles to these respective interests.

■ Under the preceding holdings, the oral and documentary evidence demanded findings that the original security deed was usurious and void; that the petitioner and the intervenors claiming under her were not entitled to register their claims of title; and that the defendants were entitled to registration of their respective titles, as stated. Accordingly, while the court properly overruled the general demurrers of the petitioner to the answers of the defendants and amendments thereto, it was error to overrule the exceptions of the defendants to the report of the examiner, and error to decree in favor of the petitioner and the intervenors.

*Judgment reversed on the main bill of exceptions; and affirmed on the cross-bill. All the Justices concur.*

ON MOTION FOR REHEARING.

JENKINS, Justice. 1. The defendants in error, plaintiffs in the trial court and the intervenors claiming under her, contend in their motion for rehearing that this court "failed to take into consideration *circumstances 'inconsistent with the testimony,'*" of the witness as to the usury, "which the special [examiner] in hearing and examining the testimony produced at the hearing considered

in discrediting the testimony" of the witness. It is observed' that the record fails to show any such contention before the examiner, the trial judge, or in this court in the original brief, or until the filing of supplemental and reply briefs; nor was the contention stressed until the present motion. Before the examiner and subsequently the movants appear to have recognized that the stress of their case fell on whether the defendants were precluded from attacking as usurious the security deed on which plaintiffs' title chiefly rested; whether the testimony as to the usury was inadmissible on the ground, first urged in this court, that the witness was disqualified by agency, attorneyship, or pecuniary interest in the suit, on account of his testimony relating to a transaction with the deceased grantee of the security deed; and whether the testimony, even if admissible, was *itself sufficient* to show usury;—all of which questions were fully dealt with in the original opinion. As there said, the record failed to support the contention of the movants that the examiner *sustained their objections* (the movants filing no exceptions), so as to relieve them from their failure to file exceptions to the admission of the evidence; and the record shows that the examiner both admitted and considered such testimony. As held in the original opinion with cited authority, among other things necessary to take a case out of the general rule that the uncontradicted and unimpeached' testimony of a witness can not be arbitrarily rejected, inconsistent "facts and circumstances" must be such as are inconsistent with his testimony, or, as expressed in *Armstrong* v. *Ballew,* 118 *Ga.* 168 (2) (44 S. E. 996), such as are "apparently in conflict therewith." This the movants recognize by urging that the circumstances to which they refer did not merely throw light on the relationship, personal feelings, or bias of the witness, but were *"inconsistent with the testimony"* of the witness. Considering then such alleged conflicting circumstances, it is noted that not one relates to the original security-deed transaction, occurring in 1911, or is contrary to the testimony with reference thereto.

(*a*) It is first urged, that, although the witness Lankford' testified that he had no authority from the defendant to take from the plaintiff a certain option contract executed by the plaintiff in 1923, by which the plaintiff agreed to resell the land to the defendant after foreclosure of the security deed and a judgment against

Lankford, the debtor and grantor, as the only defendant, yet, as the motion states, the defendant, in an amendment prepared by the witness, "while disavowing any knowledge of the option . . contract . . , in the same amendment avers that certain payments of $100 a month were made by her in accordance with an agreement" with the plaintiff as provided in the option contract. However, we do not find support in the record for this contention. It appears that the plaintiff in the original petition pleaded this option; but that the defendant then pleaded: "Said alleged option or sales agreement was never signed by her nor delivered to her, nor accepted by or approved by her, and she knew nothing about it until she saw a copy thereof attached to these proceedings; that she knew her husband was endeavoring to settle his obligation to [the plaintiff], but had no idea that an instrument such as the one involved here had been signed by [the plaintiff] or tendered to her in any way." The option bore no signature except that of the plaintiff. In view of the quoted latter part of this pleading, there is no conflict between the allegations and the further statement in the amendment that the defendant "at the instance and request of [the witness] consented that he use part of the rents arising from her said property and other money of his and her own to pay $100 per month to [plaintiff] in connection with and on a proposed settlement of the said obligation." There is no reference to payment under any option, such as might have contradicted the previous denials or testimony of the witness relative thereto. There was no proof that at the time of the option transaction or at any other time the witness was general agent of the defendant, or special agent authorized to act for her with reference thereto. With regard to the option, this court saw no reason to deal with it in the original opinion, for the reason that the movants, although pleading it in their petition, had themselves expressly abandoned it. After the defendant filed her amendment denying any knowledge or effect of the option, the plaintiff filed an amendment, as follows: "In view of said allegations which admit in effect the non-existence or force of such an agreement, . . the reference to said 'option or sales agreement' becomes moot; and plaintiff prays that the same be declared of no force and effect." Thereupon the examiner entered an order reciting that it was "consented to in open court by counsel for both applicant and the de-

fendant," and ordering that the "said alleged 'option or sales agreement' be and the same is hereby declared of no force and effect." Therefore the present contentions of the movants, as to the effect of the option and the alleged failure of this court to consider it, seem inconsistent with their former position and the order taken thereunder.

(b) Much of the motion for rehearing is devoted to argument on alleged facts and general legal principles relating to agency. However, there was no testimony as to any pecuniary interest of the witness at the time of the trial, or as to any general agency of the witness for any defendant, or as to any sort of agency or attorneyship of the witness at the time of the original security-deed transaction with the grantee who afterward died, so as to affect the qualification of the witness. The contention that at various subsequent times the witness collected rents and attended to other matters for the defendants, while showing special agency at such times, showed no general agency. In any event, these alleged facts and circumstances as to special agency failed to contradict the testimony of the witness as to usury or his other testimony, since the testimony relied on, as quoted in the motion, was derived from the evidence of the witness himself, and shows nothing inconsistent therewith.

(c) Finally, as ground for the rejection of the testimony of usury, movants say that the witness "testified to facts which, as the court points out in paragraph 10 of the opinion, would amount to usury if true, and the failure to pay the amount claimed to have been agreed to have been paid as usury would not relieve the transaction of the taint, [and] the admission that he did not pay the amount that he agreed to pay on this particular item shows further that this was his practice throughout all of these transactions;" and that he allowed the judgment to be taken against him in 1923 in the foreclosure suit without making the defense of usury. As to these matters, the record throws strong light both on the acts of the witness and on the question as to whether a finding of usury was demanded, not only by the testimony of the witness, but by facts in connection therewith. After the witness had testified, as quoted in the original opinion, that he agreed with the lender as grantee in the security deed to pay him $1000 in addition to 8 per cent. interest on the $15,000 actually advanced, without refer-

ring to any actual payment of such usury, the plaintiff asked this question on cross-examination, and the witness replied: "Q. *It is true,* in connection with the statement you have just made *regarding the premium applied to the loan by [the lender], that this entire obligation was settled at the time the effort was made to settle it for about 50 per cent. wasn't it?* A. Yes. I didn't pay the full amount of $1000. *Later on there was an amount, less possibly $500, accepted in settlement of it. At that time it was settled* with a great many other obligations." Even if this question propounded by the plaintiff to the witness, which in effect challenged him to deny the fact that the usury charge of $1000 had been settled for about 50 per cent., and which the witness not only did not deny but admitted, may not have amounted to a technical solemn admission in judicio by the plaintiff, it was of similar nature and effect, in that it amounted to the plaintiff's affirmation in open court of an existing fact within the plaintiff's own knowledge, with which the witness agreed, to wit, that usury had been charged and that it had been settled for by the payment of a less amount. The fact that less than the full agreed amount was paid did not free the transaction of usury any more than if none of the agreed amount had been paid. This settlement of the usury would seem to bear materially on the question as to why no defense was filed by the witness in the foreclosure suit, to which the defendants were not parties, and by which, as held in the original opinion, they were not bound. As to the witness himself, not only was he permitted, as he testified in accord with the plaintiff, to "settle" for the usury, so as might have obviated such a defense, but, usury being a personal plea at the option of the borrower, a failure to file such a plea would not seem to have material bearing on the subsequent credibility of the witness as to the fact of usury. Accordingly, not only did the alleged circumstances fail to contradict the testimony of the witness, which was not otherwise contradicted or impeached, but the plaintiff herself in effect accepted or vouched for the verity of its essential part by her statement in open court, as to which she and the witness were in accord.

In view of the earnest and able contentions of the movants that there were inconsistent and conflicting circumstances which authorized the examiner to reject the testimony of the witness as to usury, and which caused the examiner to discredit such testimony,

we have dealt at length with the merits of such contentions. However, neither in the examiner's findings nor in the transcript of proceedings do we find support for the insistence of the movants that the examiner disbelieved the testimony and therefore rejected it. On the other hand, it appears that he found that the instruments on which the defendants relied, being executed after the security deed, "by their terms, and *because of actual and constructive notice,* . . were all made and are subject to the title previously alienated" by the witness as grantor to the grantee in the security deed "and the title of those acquiring by virtue of same;" that "the evidence" as to part of the land, "being other than as set forth in the written conveyances, . . is found to be insufficient to so change such conveyances. Likewise, there appears *insufficient* evidence to void the security deed" from the grantor to the grantee therein. In the immediately following conclusions of law, the examiner found that "by virtue of the deeds described in my findings of fact," the plaintiff "acquired fee-simple title;" that "the claims of the objectors referred to in my findings of fact are of no force and effect because of this paramount outstanding title;" and that "possession and prescription has not operated in favor of or against any party to this suit to the extent of affecting the full force and effect of the various written conveyances." It thus appears, that, in dealing with questions as to the legal effect of the written conveyances under which the respective parties claimed, prescription, and actual or constructive notice to the defendants, the examiner ruled merely as to the *legal sufficiency* of the oral testimony to "change such conveyances," and "likewise" as to the *legal sufficiency* of such testimony "to void the security deed." It appears, that, while he admitted and considered the testimony, he thus otherwise sustained the plaintiff's contentions, made when the testimony was admitted, that "the testimony regarding payments to [the creditor is] indefinite, and [does] not state the amounts made, when they were made, or where they were made, or by whom paid, and that they are all adjudicated with the execution . . under which the applicant in this case claims title," and, as to the usury, "is too vague and indefinite as to what amounts, if any, were paid, such as would be of any probative value to sustain the allegation of usury, even if [the defendants] were either necessary or proper parties to the suit on the note and security deed on which

the execution is based." Accordingly, the finding of the examiner that "there appears insufficient evidence to void the security deed," taken in connection with the only contentions made at the time the testimony was admitted, and with the other findings and conclusions of the examiner, can not reasonably be construed as a finding that the examiner *rejected* the testimony because he did not believe it, for the reason that, as the movants now contend, he was authorized to do so by the stated facts and circumstances alleged to be *in conflict* with such testimony.

Nor could this court affirm the judgment approving the specific findings of the examiner on the theory that, even though the examiner did actually consider the testimony of the witness and merely held it legally insufficient to show usury, the examiner *could* have disbelieved and rejected the testimony and *could* have so found. While recognition is taken of the long-settled rules both that a judgment approving the verdict of a jury or findings of any other trier of the facts must on the general grounds be affirmed if there be any evidence to support the verdict or finding, and that *if a decision is legally correct,* the mere fact that the judge based it on a wrong ground' or reason will not ordinarily work a reversal, we know of no extension of these principles that would require an affirmance of the present judgment on the theory that the evidence would have *authorized* the examiner to make a *different finding,* which, if it had been made, would have authorized other findings which he actually made. So to hold would require a new finding by this court, and in effect make it an original trier of the facts, and not a court of review on the rulings actually made. As the general rule is stated in 3 Am. Jur. 462: "An appellate court will not make findings, even though the evidence clearly warrants them; nor will it add to a special finding a fact, unless that which is added results as a *necessary* conclusion from the facts found." See, in addition to numerous cases there cited: White *v.* Beal &c. Grocer Co. (Ark.), 45 S. W. 1060 (9), 1062; Smith *v.* Los Angeles &c. Asso., 78 Cal. 289 (20 Pac. 677, 678, 12 Am. St. R. 53). "Relatively to the revising powers of this court, the jury [or other triers of the facts] are the exclusive judges of the credibility of witnesses." *Rome R. Co.* v. *Barnett, 94 Ga.* 446 (5) (20 S. E. 355); *Plummer* v. *State, 1 Ga. App.* 507 (57 S. E. 969); *King* v. *Jackson, 9 Ga. App.* 413 (71 S. E. 491); *Booker* v. *State,*

50 *Ga. App.* 66, 68 (176 S. E. 917). While the particular question as to the right of the appellate court to make a new and different finding has not arisen in this State, there are analogies. Thus, although a trial judge is vested with discretion in the grant of an injunction where there is conflicting evidence, his judgment will be reversed if he did not actually pass upon such evidence, but based his judgment on an erroneous legal ground. *Colclough* v. *Bank of Penfield,* 150 *Ga.* 316 (2-b) (103 S. E. 489), and cit.; *Head* v. *Bridges, 72 Ga.* 30 (2). Also, in the refusal of a new trial, even though there may have been conflicting evidence which *would have authorized* the trial judge to refuse a new trial *if* he had considered and acted thereon, his judgment will be reversed unless he in fact considered and passed upon such evidence. *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606) ; *Thompson* v. *Warren,* 118 *Ga.* 644 (45 S. E. 912). Accordingly, irrespective of the merits of movants' present contention as to the existence of conflicting circumstances which *might* have affected the credibility of the witness, it would seem, in view of the actual findings of the examiner and the record relating thereto, that this would afford no basis for an affirmance by this court.

2. An additional ground of the motion is that the court overlooked the fact that in 1915 the grantor in the original security deed of 1911 executed a deed to the father of the defendant in consideration of payment by that grantee of certain debts of the grantor; that in 1920 that grantee executed to the defendant wife the bond for title referred to in the original opinion, and obligating her to pay debts of her husband; that this bond was not good color of title, because the contract of the wife to pay debts of her husband was "inhibited by law;" that it did not have the "sanction of a superior court;" that her possession under the bond was merely permissive, and before a prescriptive title could have ripened under it the obligor father in 1925 executed a deed to the husband, who did not execute a quitclaim deed to the wife until 1937 during the pendency of the suit; that this deed could not be tacked on to the bond for title, although it recited that it was made to correct a mistake by all of the parties in not executing deed to the wife in conformity to the 1920 bond for title, and the testimony as to such an actual mistake was undisputed; and that "even

though title could not have been registered in the [petitioner], it could not be registered in the defendants on a prescription theory, and there is no other theory in the case." All of these questions were fully considered and most of them dealt with in the original opinion. The bond for title, made in 1920, shows that the daughter agreed to pay to her father "a sum of money equal to the principal, interest, and costs of all the executions, judgments, liens, items, and amounts which were due by [the daughter's husband to the father], and which were the consideration moving" the husband to deed the property to the father in 1915. Such a transaction, not being a "sale" by the wife to the husband, did not require approval by the superior court, under the Code, § 53-504. Even assuming that the quoted recitals in the bond for title might indicate an assumption by the wife of debts of her husband, or a contract of suretyship with the father, in contravention of the Code, § 53-503, still this would not have rendered the instrument void, so as to have precluded the wife, as against the vendor in the bond, from choosing to be bound thereby and relying thereon, as she did. *Jones* v. *Harrell,* 110 *Ga.* 373, 375 (35 S. E. 690) ; *Scaife* v. *Scaife,* 134 *Ga.* 1, 4 (67 S. E. 408) ; *Colquitt* v. *Dye,* 29 *Ga. App.* 247 (3) (114 S. E. 643). Nor was the making of the quitclaim deed to the wife in 1937, pending the suit, pertinent either to bolster or to weaken her title by prescription, claimed and proved under the bond for title made to her by her father in 1920 and under the deed made to her father in 1915. Had the defendant based her claim on the 1937 deed, the rule applied in division 9 of the opinion against the right of the plaintiff to claim registration under deeds from a city and city marshal, executed after the filing of the suit, would have been equally applicable against the defendant. But under the claim as actually made, based on prescription under previous instruments, the deed pending the suit was irrelevant on the question of registration of title, and relevant only to show that the grantor in that deed had no title conflicting with that of the defendants and had no pecuniary interest in the property.

Since the remaining contentions of the motion, as to the right of the defendants to raise the question of usury and as to questions of prescription, have already been exhaustively considered in the original opinion, it is unnecessary to deal further therewith.

*Rehearing denied.*