CITIZENS & SOUTHERN NATIONAL BANK, executor, *v.* ELLIS, administrator.
ELLIS, administrator, *v.* ASA G. CANDLER INC. *et al.*

Nos. 7814, 7815. JANUARY 16, 1931.

724

*Tye, Thomson & Tye,* for the bank as executor, and for Asa G. Candler Inc.

*Branch & Howard* and *Colquitt, Parker, Troutman & Arkwright;* for the plaintiff administrator.

HINES, J. (After stating the foregoing facts.)

■ We can not agree with the contention of counsel for the defendants that the Adairs had no interest in the Gramling property after Realty Investments had conveyed it to Mr. Candler. Where, under the contract of May 12, 1910, between Mr. Asa G. Candler Sr. and Forrest and George Adair, the Gramling property was purchased with money furnished by the former, and the title thereto taken in the name of Realty Investments, this company held the same impressed with a trust in favor of the respective parties to this contract. In other words, Realty Investments held this property in trust for the benefit of Mr. Candler, so that he could get back the money which he put therein, with six per cent. interest thereon, with one half of the profits which might be made in this venture; and Realty Investments likewise held the title to this property under an implied trust for the benefit of the Adairs, by which they were to get one half of the profits realized after Mr. Candler had been repaid the purchase-money of the property with six per cent. interest thereon. When Mr. Candler procured the Realty Investments to convey this property to him, and simultaneously wrote the Adairs the letter of February 3, 1916, in which he assured them that the execution of this deed did not affect their interest, but it was the intention that the status of the property should remain the same as if the title of the property had been left

in Realty Investments, Mr. Candler stepped into the shoes of the Realty Investments, and he held this property impressed with a trust in favor of the Adairs to the extent of their interest in one half of the net profits which would be derived therefrom. A trust was so impressed upon this property under the familiar principle that one is implied "whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money, or other circumstances, is either wholly or partially in another." Civil Code (1910), § 3739; *McDonald* v. *Dabney*, 161 *Ga.* 711 (10) (132 S. E. 547).

But it is urged by his counsel, that, when Realty Investments conveyed this property to Mr. Candler, he could not become trustee for the Adairs as individuals, and independently of their status as stockholders. Counsel insist that this is so because there can be no resulting or implied trust for the Adairs, because they did not convey the property to Mr. Candler, had not furnished any of the purchase-money, and had not performed any services from which a trust would be implied. We can not concur in this contention. Under the view which we take of this case, the trust arose under the contract between Mr. Candler and the Adairs as individuals. Under the scheme evidenced by the contract between them, Realty Investments was selected as their corporate trustee to hold the title for their joint benefit. This trust arose by Mr. Candler furnishing the money with which this property was purchased, and by the Adairs, who were skilled realtors, contributing their services in making the venture a successful one. The Adairs were to manage this property with the view of making it productive of profits. The success of the enterprise depended largely upon their successful handling of this branch thereof. The relation of Realty Investments to the enterprise would not have been different if its stockholders had been persons other than the Adairs. This corporation was selected as the joint trustee of the parties. The profits to be derived from the venture were in no way dependent upon the personnel of the stockholders of the trustee. The situation would have been the same if the corporation selected as trustee had been one in which the Adairs were not stockholders. The fact that the Adairs were stockholders in the company no doubt influenced the parties to the contract in selecting it as their corporate trustee or agent. Under the facts of the case the trust created was

not one for the benefit of this corporation, but was for the benefit of Mr. Candler and the Adairs in their individual capacities. There is a stipulation in the record, that, after deducting the amount of the purchase-price paid, and the interest thereon, and the costs of improvements put upon this property, and the maintenance of the same, and crediting the rentals thereof, there would be, upon the sale thereof, a profit to be divided, if the plaintiff is entitled to share therein. This being so, the Adairs would be entitled to share therein, and the plaintiff in this case would be entitled to recover, if George Adair had not in some way been satisfied for his interest in these profits, and if the plaintiff was not barred by the statute of limitations and by laches.

This brings us to consider and answer this question: Is George Adair or his administrator entitled to recover any profits arising from the purchase and management of the Gramling property? On March 15, 1917, Asa G. Candler Sr., for ten dollars and other valuable considerations, conveyed by warranty deed the Gramling property, with other real estate, to Asa G. Candler Inc. He thus treated this property as his own, and conveyed it warranting that he had good title thereto. On August 14, 1917, George W. Adair conveyed the Gramling property by quitclaim deed to Asa G. Candler Inc., for the alleged consideration of $5. This quitclaim deed conveyed to this corporation whatever right, title, or interest the maker had in this property. At that time he did not have the legal title thereto. The only interest that he had at that time, if any, was the beneficial interest to which he was entitled under the implied trust with which we have dealt in the first division of the opinion. This was the only interest upon which his quitclaim deed could operate. So it is fairly inferable that he meant to convey this beneficial interest. But it is urged by counsel for the plaintiff that the evident purpose of this quitclaim deed was to cure an apparent discrepancy in the description of the property. We do not think that such purpose is evident. It is true that George Adair acquired this property by sheriff's deed dated January 4, 1910, in which this property is described as fronting 110 feet on West Peachtree Street, and as running back along Baker Street 132 feet to an alley. It is likewise true that when George Adair, on September 22, 1914, conveyed this property to Realty Investments, he described it as fronting 110 feet on West Peachtree

Street, and running back along Baker Street 122 feet; but this deed contains a recital that a ten-foot strip along West Peachtree Street had been taken off for the purpose of widening that street. In view of these facts it can hardly be contended that the evident purpose of the subsequent quitclaim deed was to cure an apparent discrepancy in the description of the property in the deed from George Adair to Realty Investments. Such discrepancy in the description of the property in these two deeds was accounted for by the recital in the deed from George Adair to Realty Investments; and the execution of his quitclaim deed to Asa G. Candler Inc. was not necessary to correct the misdescription of this property in the deed from George Adair to Realty Investments. It is fairly inferable from the facts that George Adair intended to quitclaim and did quitclaim any title legal or equitable, and any interest which he had in the Gramling property, including any title or equitable interest that he had in the strip of ten feet which had been taken from the Gramling property for the purpose of widening West Peachtree Street. So we are of the opinion that George Adair, by this quitclaim deed, conveyed to Asa G. Candler Inc. all title, right, and equitable interest which he had in the Gramling property at the date of the execution of this quitclaim deed; and that his administrator could not maintain the present proceeding for an accounting for any interest, legal or equitable, which he then had in this property.

But this quitclaim deed did not have the effect of conveying to the grantee therein any title or equitable interest which Forrest Adair had in this property. On November 12, 1927, Forrest Adair sold, transferred, and assigned to Ellis, as administrator of George Adair, his right and interest in and to the contract of May 12, 1910, between Asa G. Candler Sr. and Forrest and George Adair, concerning the corporation known as Realty Investments, and especially concerning the Gramling property. In the writing evidencing this sale, transfer, and assignment, it is expressly declared that its purpose and intent is to convey to the estate of George Adair, and his administrator, the interest of Forrest Adair in said contract and in any moneys to be paid thereunder. Whatever title or interest the estate of George Adair or his administrator acquired under this sale, transfer, and assignment did not pass by the previous quitclaim deed from George Adair to Asa G. Candler Inc. Only such title or interest as the grantor possessed at the time of

giving a quitclaim deed passed thereunder. Such deed did not operate to convey after-acquired title or interest. *Bivins* v. *Vinzant,* 15 *Ga.* 521; *Morrison* v. *Whiteside,* 116 *Ga.* 459 (42 S. E. 729); *Taylor* v. *Wainman,* 116 *Ga.* 795; *McDonald* v. *Dabney,* supra.

So this question arises: Did Forrest Adair have any title or interest, legal or equitable, in the Gramling property, which he could sell, transfer, or assign to the estate of George Adair or his administrator, at the time the above instrument was executed? Prior to March 15, 1917, Asa G. Candler Sr. had erected on the Gramling property a building at the cost of $70,000 or more. On March 15, 1917, Mr. Candler conveyed the Gramling property by warranty deed, together with other realty, to Asa G. Candler Inc., which deed was duly recorded. As we have seen, George Adair, on August 14, 1917, conveyed, by his quitclaim deed to Asa G. Candler Inc., any title or interest, legal or equitable, which he had in this property. The record discloses that no demand had ever been made upon Mr. Candler, or upon Asa G. Candler Inc., by the Adairs, or either of them, for any accounting for profits accruing to Mr. Candler or the corporation from the purchase and improvement of this piece of property. The property had been improved by Mr. Candler, at big expense, more than eleven years prior to the filing of the present suit; and during all that time Mr. Candler and the corporation had received and enjoyed the profits arising therefrom. From the intimate business relations between Mr. Candler and the Adairs, it is fair to assume that the Adairs were familiar with the transactions just recited. Under the familiar doctrine that bad faith is never to be imputed to others, it can not be presumed that Mr. Candler did convey by his warranty deed this property to Asa G. Candler Inc., thus vesting in the grantee the legal title thereto, and all equitable interests therein, when he held the same impressed with a trust in favor of the Adairs, and in so doing violated the trust imposed in him. On the contrary it will be assumed that he acted in good faith in this transaction, and that when he entered into it he had in some way acquired whatever equitable interests the Adairs had in this property. At least such inference is deducible from the facts surrounding this transaction. From the fact that Asa G. Candler Inc. took possession of this property more than eleven years prior to the institution of the

present suit, and received and enjoyed all the rents and profits arising therefrom, and that no demand had been made upon it by the Adairs, or either of them, for their share of the profits arising from the operation of this property, the deduction can well be drawn that they had in some way received their share of these profits, or had in some way disposed of their equities therein and of their right to share in such profits. From the fact that they had not called upon Mr. Candler for a share of these alleged profits for more than eleven years prior to the institution of this suit, and not until his mouth had become shut by reason of his physical and mental infirmities, which rendered him incapable of meeting the attack made upon him, the conclusion must be drawn that they were not entitled to any of these profits, upon the ground that they had either received them from Mr. Candler or in some way had been settled with by him for such interests or profits. Under the facts above recited, and from others appearing in the record, a verdict was demanded finding that neither George Adair nor his administrator had any right to call upon Mr. Candler for an accounting for the profits received from the enjoyment of this property during the long period of time when the Adairs remained inactive and made no claim thereto. So we think that the trial judge erred in directing the jury to find in favor of the right of the administrator of George Adair to maintain this suit against Asa G. Candler Sr. for the recovery of these profits.

■ Was the plaintiff's cause of action barred by laches at the time this suit was instituted on April 27, 1928? Subsisting trusts, cognizable only in a court of equity, are not within the ordinary statutes of limitation; but notwithstanding this rule, equity will in all cases consider the lapse of time in decreeing an account, and where, from it and other circumstances, it would be inequitable, any relief will be refused. Civil Code (1910), § 3782. As long as a person who is in possession of the property of another, using the same for the owner's benefit, recognizes the latter's ownership, no lapse of time will bar the owner from asserting his title as against the person in possession. Before any lapse of time will be a bar to the owner, it must appear that the person in possession has given notice, or there must be circumstances shown which would be equivalent to notice to the owner that the person in possession claims adversely to him. In such a case the statute will begin to

run from the date of such notice. Until the owner has such notice, he has the right to treat the possession of the other person as his own. *Kealon* v. *Greenwood*, 8 *Ga.* 97. This is the principle at the foundation of the rule embodied in the above section of the Code. Although the principle of this section is applicable in terms alone to cases of equitable trusts which are cognizable only in equity, the principle upon which it is founded is applicable in some cases where a technical trust has not been created; the principle being that as long as one recognizes that property in his possession belongs to another, the latter has the right to treat this possession as his own. *Teasley* v. *Bradley*, 110 *Ga.* 497 (35 S. E. 782, 78 Am. St. R. 113) ; *Jenkins* v. *Georgia Investment Co.*, 149 *Ga.* 475 (100 S. E. 635). It has likewise been held, that, in case of an implied trust, the person holding the property in trust can never, while flying colors indicating a trust, claim the advantage of the statute of limitations as a bar to an action for accounting; but that upon a change of status that would show an adverse holding, the statute would commence to apply. *Garner* v. *Lankford*, 147 *Ga.* 235, 240 (93 S. E. 411). Wherever it appears that the trustee or person in possession has given notice, or there are circumstances shown which would be equivalent to notice to the owner that such trustee claims adversely, the statute of limitations will run from the date of such notice. *Teasley* v. *Bradley*, supra; *Jenkins* v. *Georgia Investment Co.*, supra. But even in such cases, as we have seen, equity will consider the lapse of time in decreeing an account.

All actions against executors, administrators, guardians, or trustees, except on their bonds, must be brought within ten years after the right of action accrues. Civil Code (1910), § 4366. When did the right of action accrue in this case? On March 15, 1917, Asa G. Candler Sr. conveyed this property by warranty deed to Asa G. Candler Inc. This was more than eleven years prior to the institution of this suit. This was such a change in the relations of the parties as would warrant the inference that the implied trust had in fact ceased. *Teasley* v. *Bradley*, supra; *Thornton* v. *Jackson*, 129 *Ga.* 700 (59 S. E. 905) ; *Franklin* v. *Lesser*, 147 *Ga.* 77 (92 S. E. 890) ; *Collins* v. *Henry*, 155 *Ga.* 886, 892 (118 S. E. 729). When Mr. Candler by warranty deed conveyed this land to the corporation, it amounted in effect to a repudiation of any equitable interest of the Adairs therein. The cause of action of the Adairs,

if any, for a share in the profits realized from this real estate, accrued at that time; and as more than eleven years had run between that date and the institution of this suit; and if the statute of limitations applicable to subsisting trusts applies, the cause of action was barred.

But there is a stronger reason for holding that this action was barred; and that is upon the ground of laches. "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." Civil Code (1910), § 4536. The doctrine of stale demands is purely an equitable one. *Ellis* v. *Smith,* 112 *Ga.* 480 (37 S. E. 739); *Stanley* v. *Reeves,* 149 *Ga.* 151 (99 S. E. 376); *City of Barnesville* v. *Stafford,* 161 *Ga.* 588 (131 S. E. 487, 43 A. L. R. 1045). This defense is based on the maxim that equity aids the vigilant, and not those who slumber on their rights. *Southern Ry. Co.* v. *Lancaster,* 149 *Ga.* 434 (100 S. E. 380). In determining whether there has been laches, various things are to be considered, notably the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation thereof, whether during the delay the evidence of the matters in dispute has been lost or become obscure, whether plaintiff or defendant was in possession of the property in suit during the delay, whether the party charged with laches had an opportunity to have acted sooner, and whether the party charged with laches acted at the first possible opportunity. To constitute the defense of laches the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, due to loss or obscuration of evidence of the transaction in issue, or where the lapse of time has been sufficient to create or justify a presumption against the existence or validity of the plaintiff's right, or to justify a presumption that, if the plaintiff was ever possessed of a right, it has been abandoned or waived, or has been satisfied. *Equitable Building & Loan Asso.* v. *Brady,* 171 *Ga.* 576 (156 S. E. 222). When this action was instituted, all of the persons who were interested in this transaction had become incapable of throwing any light upon the subject-matter of this litigation. George Adair had died. Forrest Adair had become mentally incapable of testifying. Mr. Candler from the infirmities of old age had become incapable of

comprehending the nature of the suit or of testifying therein. His answer had to be filed by one as his next friend. He died pending the action, and before the trial thereof. The lapse of time from these and other reasons has rendered the ascertainment of the truth in this matter very doubtful, if not impossible. As we have seen, from the facts dealt with in the second division of this opinion, the inference is deducible that the equity of the Adairs in this property had been in some way fully satisfied by Mr. Candler. In these circumstances we are of the opinion that the equitable principle of laches is applicable; and that the trial judge erred in not sustaining this defense, and in not directing a verdict in favor of the executor of Mr. Candler. In *Hines* v. *Johnston*, 95 *Ga.* 629 (23 S. E. 470), the two persons holding the legal title in trust for the third had done nothing to change the status of the property by conveying it away or to indicate any denial or repudiation of the trust. Besides there was no notice to the third person of any such situation.

■ It follows that the court did not err in directing a verdict in favor of Asa G. Candler Inc., as there could be no recovery against this defendant if Asa G. Candler Sr. was not liable upon the claim asserted by the plaintiff.

*Judgment reversed in Case No. 7814, and affirmed in Case No. 7815. All the Justices concur.*