318.

HOLTON *et al. v.* LANKFORD *et al., et vice versa.*

Nos. 14333, 14334, 14335, 14336. JANUARY 13, 1943.
REHEARING DENIED FEBRUARY 11, 1943.

*Powell, Goldstein, Frazer & Murphy* and *W. C. Lankford,* for Lankford *et al. R. A. Moore, L. L. Forchheimer, B. G. O'Berry Jr.,* and *Memory & Memory,* for Holton *et al.*

REID, Chief Justice, being disqualified, Judge A. L. Etheridge, of the Atlanta Judicial Circuit, was designated for these cases.

ETHERIDGE, Judge. On September 15, 1928, Mrs. Rilza T. Holton filed a petition to register four tracts of land under provisions of the land-registration act of 1917, she claiming title by reason of seven years adverse possession under color of certain deeds set out in her petition; the color of title being claimed by virtue of a security deed executed by W. C. Lankford, dated November 7, 1911, to B. H. Tanner, to secure a debt of $15,000, due January 1, 1917, said deed by assignments being later transferred to Mrs. Holton; and also by virtue of a sheriff's deed made in 1923 to Mrs. Holton, reciting the judgment, levy, and sale of the property in 1923 under a suit by Mrs. Holton against W. C. Lankford to foreclose the security deed. Mrs. Mattie L. Lankford, wife of W. C. Lankford, the maker of the security deed, on October 31, 1928, filed her answer in this proceeding; and by amendment filed February 27, 1937, she made an attack on the security deed from her husband to B. H. Tanner, as being usurious and void, and claimed the right to registration of her title by virtue of a deed made in 1915, from W. C. Lankford to J. S. Lott, and a conveyance from Lott to her under a bond for title in 1920, on the tracts in question, except an undivided half interest in tract No. 4, and claimed adverse possession for seven years under these instruments. H. L. Lankford, a brother of W. C. Lankford, and after his death his heirs and administrator, filed similar defenses and an additional

defense based on suretyship, and claimed title in the H. L. Lankford heirs to an undivided half interest in tract No. 4, under deed made in 1913 by W. C. Lankford to H. L. Lankford.

After general demurrers to the defendants' answers and amendments were overruled, the case was referred to an examiner; and after he made his report finding generally in favor of the plaintiff's contentions, the defendants, Mrs. Mattie L. Lankford and the heirs of H. L. Lankford, filed exceptions of law and fact to the report of the examiner. These exceptions were overruled by the court, the report of the examiner confirmed, and final decrees were entered in favor of Mrs. Holton, subject to rights of certain intervenors claiming under instruments executed by Mrs. Holton to them between 1928 and 1934. Exceptions to the final decrees were filed by the defendants, and on October 15, 1938, this court reversed the ruling of the superior court on the main bill of exceptions, and affirmed the ruling on the cross-bill of exceptions. *Lankford* v. *Holton,* 187 *Ga.* 94 (supra). This court held that the evidence before the examiner demanded the finding, first, that the security deed from W. C. Lankford to B. H. Tanner was infected with usury, and the sheriff's deed executed thereunder on the foreclosure afforded no basis for the registration of title in the name of Mrs. Holton, transferee of the security deed and purchaser under the foreclosure; and second, that Mrs. Mattie L. Lankford, under the evidence, was entitled to have title to three and one-half tracts of land registered in her name, by reason of the adverse possession of more than seven years under the deed to said tracts made by W. C. Lankford to J. S. Lott, and by Lott, in turn, under bond for title, to Mrs. Lankford, in 1920; third, that the heirs of H. L. Lankford were entitled to have a half undivided interest in tract No. 4 registered in their names, by reason of the adverse possession under color of title since 1913. This court, without giving any specific direction, ruled that it was error for the trial court to overrule the exceptions of the defendants to the report of the examiner, and erred in rendering a final decree in favor of the plaintiff, and reversed the judgment.

Upon the return of the remittitur to the lower court, the plaintiff offered two amendments to her petition, the basis of said amendments being, first, upon the ground of newly discovered evidence as to usury, and in the second amendment claiming that

Mrs. W. C. Lankford, by reason of certain written agreements made in October, 1923, was estopped to plead usury. The amendments were disallowed, and a decree was entered, registering the title of said tracts in the defendants. On November 16, 1939, this court held that upon the return of this case to the lower court after its first appearance here, in the absence of any specific direction given therein, it was the duty of the trial court to recommit the case to the examiner "for a de novo investigation, with the right to either party to offer amendments and introduce evidence as upon an original hearing," and that the trial court was without authority to set aside the findings of the examiner and enter a final decree upon the report registering title in favor of the defendants, in the absence of special findings of fact and law by the examiner. *Holton* v. *Lankford*, 189 *Ga.* 506, 529 (supra).

Upon the return of this case to the trial court, the judge passed an order recommitting the case to the examiner, with direction and authority to hear anew all matters pertaining to the case. On October 8, 1940, the case came on again to be heard before the examiner; and after certain amendments were allowed and demurrers had been offered by both sides, and after hearing the evidence, the examiner, on October 1, 1941, filed his final report. The examiner found as a matter of fact and law that H. L. Lankford acquired a good prescriptive title to one half undivided interest in tract No. 4, under the deed executed to him by W. C. Lankford on December 2, 1913; and that by reason of certain agreements between Mrs. Holton and Mrs. Lankford, on October 27, 1923, entered into while suit of Mrs. Holton to foreclose the debt secured by the loan deed from W. C. Lankford to B. H. Tanner was pending, Mrs. Lankford was estopped from claiming prescriptive title to the remaining $3\frac{1}{2}$ tracts; and the examiner found that an equitable title to tracts 1, 2, and 3, and one half undivided interest in tract No. 4, vested in Mrs. Lankford, and the legal title to these named tracts was vested in Mrs. Holton, and those claiming under her, subject to be divested upon the complete satisfaction of the obligations contained in a certain option contract between Mrs. Holton and Mrs. Lankford in 1923, and recommended that title be registered accordingly.

The defendants filed exceptions of fact and law to this report of examiner. When the exceptions came on for a hearing, the

plaintiffs filed a motion to dismiss the exceptions of fact and law, and the defendants filed a traverse to the motion. Upon hearing the motion, the court passed an order providing that the matters contained in such motion would be passed on at a later date. No final disposition was made on the motion or traverse.

The defendants sought to amend their exceptions by setting out, as an exhibit to exception of fact No. 3, the verdict and decree of the court in the case of Mrs. R. T. Holton v. E. L. Tanner et al., from Coffee superior court, dated January 8, 1923, which required the administrators of the estate of B. H. Tanner to execute to Mrs. Holton a formal assignment in writing of the security deed executed by W. C. Lankford, the basis of Mrs. Holton's alleged prescriptive title. This amendment was disallowed, and error was assigned thereon. The court also overruled a demurrer by the defendants to the plaintiff's petition as amended in October, 1940, and error was assigned on this ruling.

On January 29, 1942, the court overruled and denied the exceptions by the defendants to the examiner's findings of fact and of law, and error was assigned pendente lite on this ruling. On August 17, 1942, the court entered six separate final decrees. Three decrees declared the legal title to tracts 1, 2, and 3 as being vested in Mrs. R. T. Holton, subject to certain lease contracts and option to purchase in favor of named intervenors, and subject to divestment upon satisfaction by Mrs. M. L. Lankford of obligations contained in contract made by her with Mrs. R. T. Holton in 1923. One of three other decrees decreed title to a half undivided interest in tract No. 4 as being in the named heirs of H. L. Lankford; the other two decrees being in the name of certain intervenors, subject to divestment in satisfactory manner by Mrs Lankford of obligations made in contract made by her with Mrs. Holton.

To this final judgment Mrs. M. L. Lankford and the heirs of H. L. Lankford filed their bill of exceptions (14333) in which error was assigned in the following particulars: (a) To the order of August 15, 1940, setting aside the examiner's report and recommitting the case to the examiner for a further hearing. (b) To the order of the court failing to pass on the motion of the plaintiffs to dismiss exceptions of fact and of law, and of the defendants' traverse thereto. (c) To the order of January 29, 1942, refusing to permit the defendants to file an amendment to their exceptions

to finding of fact No. 3, by setting out as an exhibit the verdict and decree directing the administrator of B. H. Tanner estate to execute a proper assignment of the W. C. Lankford security deed to Mrs. R. T. Holton. (d) To the orders of January 29, 1942, overruling the demurrers of the defendants to petition as amended by the two amendments in October, 1940. (e) To the order of January 29, 1942, overruling and denying the exceptions to the findings of examiner. (f) To the final order and judgment of the court of August 17, 1942, decreeing the registration of title in Mrs. R. T. Holton, with certain intervenors, to three tracts, and a one half undivided interest in the fourth tract.

Mrs. R. T. Holton and others, in their cross-bill of exceptions (14334), assigned error on the order of January 1, 1942, overruling the demurrers of the plaintiff to exceptions filed by the defendants to report of examiner, and assigned error on the order of January 29, 1942, overruling the plaintiff's demand for a jury trial on the defendants' exceptions of fact to the report of the examiner. No specific assignment of error was made in the cross-bill of exceptions on exceptions pendente lite, which were filed and sent up with the cross-bill of exceptions as exhibits. A motion by the plaintiffs in error in the cross-bill of exceptions, to be permitted to assign error on the exceptions pendente lite, is granted. *Hall County* v. *Gilmer*, 123 *Ga.* 173 (51 S. E. 307).

The writs of error in cases 14335 and 14336 grew out of the same case, and involve the same parties dealt with in cases 14333 and 14334. In case 14335 Mrs. R. T. Holton et al. filed their bill of exceptions complaining of error in the final decree of August 17, 1942, registering title to four parcels of land. In case 14336 Mrs. Mattie L. Lankford et al., who were defendants, complained by cross-bill of exceptions of alleged errors occurring during the proceedings in the superior court. Mrs. Holton and others excepted pendente lite to orders passed by the judge, as follows: (1) The order overruling demurrers of June 5, 1941, and July 5, 1941, to the amendment of the defendants' answer. (2) The order overruling the demurrer of July 18, 1941, to the amendment of the defendants' answer. (3) The order of December 29, 1941, overruling the objections to allowance of amendment to defendants' answer. (4) The order overruling objections by plaintiffs to allowance of amendment to defendants' answer and cross-action.

(5) The order overruling motion to recommit the case to the examiner. (6) The order of January 29, 1942, denying the plaintiffs' demand for a jury trial on their exceptions of fact. (7) The order overruling their exceptions of fact. (8) An order overruling the motion of April 24, 1942, to exclude certain testimony of W. C. Lankford. They further complain that the findings of fact and law as embodied in the final decree of title in the heirs of H. L. Lankford to an undivided half interest in parcel number 4, and that Mrs. W. C. Lankford held an equitable title to the 3½ parcels, with her right to divest the legal title of Mrs. R. T. Holton upon performance of the obligations in the option contract of October, 1923, were erroneous.

Mrs. Lankford and others assigned error on exceptions pendente lite which assigned error on the following: (1) The order of January 1, 1942, overruling the demurrer to exceptions by plaintiffs to the report of the examiner. (2) The order of January 1, 1942, complaining of the overruling of the defendants' demurrer to the plaintiffs' motion to recommit. (3) The order overruling the defendants' traverse of the plaintiffs' motion to dismiss certain exceptions by defendants, of January 7, 1942.

We have endeavored to make a brief statement of the case. But to try to narrate in a short and concise form the history of litigation which began in 1928, with two appearances in this court, and now on its third appearance, with a record of over 2500 pages of typewritten matter, approaches the impossible. We have set out only the facts in the record which we think are necessary for a clear understanding of the opinion which follows:

The case at this stage, in spite of the ponderous record, is narrowed down to a few issues. On its first appearance we ruled, first, that the evidence as then before us demanded a finding that the security deed from W. C. Lankford to B. H. Tanner was tainted with usury, and could not be a basis for obtaining a prescriptive title by adverse possession, and the sheriff's deed executed to Mrs. Holton under the foreclosure proceedings did not give to Mrs. Holton color of title on which prescription would run; and second, the evidence showed that Mrs. Mattie L. Lankford had a good prescriptive title to three and one-half tracts, and the heirs of H. L. Lankford prescriptive title to the remaining one-half tract, and title should be registered accordingly. *Lankford* v. *Hol-*

*ton,* 187 *Ga.* 94 (supra). On the second appearance of the case we held that in the absence of specific direction from this court, instead of rendering a decree on the evidence then in the record, the trial court should have referred the case again to the examiner, with the right of "each party to introduce additional evidence on the next trial, and a different case may be presented." 189 *Ga.* 527. So now, if the evidence is the same as appeared in the record of the case in its debut here, the rulings therein control, and a reversal must follow; but if on the last hearing new contentions and different issues supported by new evidence were introduced which authorized the examiner to make findings contrary to the conclusions we stated in 187 *Ga.* 94, then our task is somewhat narrowed in the consideration of the main bill of exceptions (14333) to this one controlling question: Does the evidence as to waiver and estoppel support the findings of the examiner that Mrs. Lankford was estopped to claim that Mrs. Holton's title was tainted with usury, and that Mrs. Lankford had by waiver estopped and prevented herself from claiming prescriptive title to the tracts of property involved? We will first deal with the main bill of exceptions in *Lankford* v. *Holton* (14333). Before coming to the main question, however, we will first pass upon several assignments of error dealing with interlocutory matters preceding the entry of the final decrees.

1. After this court reversed the decree registering title in Mrs. Holton, she filed amendments setting up the contention that new evidence had been discovered since the first trial, which as set out refuted the claim that the security deed from W. C. Lankford to B. H. Tanner was tainted with usury. Also it was contended that in 1923 Mrs. Lankford had entered into a written agreement with Mrs. Holton as to the foreclosure of the Lankford security deed and the sale thereunder to Mrs. Holton, and pursuant to various understandings set out in the written agreement. Thereupon an option was given to Mrs. Lankford to purchase the tracts which Mrs. Holton had bought at the sheriff's sale. The demurrers of the defendants to this amendment were properly overruled, because the contentions and issues were not raised or involved in the first appearance of the case here, and on a de novo investigation before the examiner all parties had the right to file additional pleadings setting up relevant and pertinent matters to the questions at issue.

2. Upon the second return of this case the superior court entered an order setting aside the order approving the findings of the examiner, and recommitted the case to the examiner, with direction to have new hearings in the case and make his report thereon. The defendants objected to this order and assigned error. We hold that the court did not err in ordering such recommittal, because, under the rulings we made in the case on its second appearance (189 *Ga.* 527), it would have been error to do otherwise.

3. The plaintiffs moved to dismiss the exceptions filed by the defendants, to which a traverse was filed. On January 1, 1942, the court passed an order, in substance, deferring to another date a decision on the questions raised in the motion and traverse. Such order does not provide a ground for such exception, it being administrative only in character.

4. The defendants sought to amend their exceptions to finding of fact 3, by setting out the verdict and decree of Coffee superior court in the case of Mrs. R. T. Holton v. Administrators of B. H. Tanner estate. The examiner found, as a matter of fact, that a part of the chain of title held by Mrs. Holton consisted of a corrected deed which was made by the administrator of the Tanner estate pursuant to a decree in the above-named proceedings. The defendants claim that this deed was void, because the title to the real estate was in the heirs of B. H. Tanner, and since they were not parties to such suit the administrator could not lawfully execute a corrective deed. The motion to amend was denied. This ruling was not error, because the defendants could not in a collateral proceeding make an attack upon a decree in another case, which decree was the basis upon which the corrective deed was made. Furthermore, the exhibit they sought to set up by amendment appears in the record as a part of the examiner's report.

5. The defendants made several assignments of error on findings of fact and of law, on the grounds that the examiner failed to make certain specific findings of fact and of law. Where an examiner or auditor fails to make certain findings which one of the parties thinks should have been made, a motion to recommit for such purpose, and not an exception to such failure, is the proper procedure. *Collinsville Granite Co.* v. *Phillips,* 123 *Ga.* 830, 835 (51 S. E. 666). "Exceptions should go to what the auditor re-

ported, not to what he did not report." *Weldon* v. *Hudson,* 120 *Ga.* 699 (48 S. E. 130); *Smith* v. *Wilkinson,* 143 *Ga.* 741 (85 S. E. 875).

6. The decrees registering title to three tracts in Mrs. Holton and one half undivided interest in the fourth tract in certain intervenors were based upon the following findings: The examiner found as a matter of fact that "on October 27th, 1923, while the suit mentioned in finding of fact 8 was pending, Mrs. Rilza T. Holton and Mrs. Mattie L. Lankford entered into a contract evidenced by the agreement recorded October 10, 1940, in deed book 60, pages 605-6, a copy of which is attached to petitioner's amendment of October 8, 1940; and the 'escrow contract and option' recorded in deed book 43, pages 91-2, a copy of which is attached to Mrs. Holton's original petition. W. C. Lankford consented to this contract." (Finding of fact 9.) Also, "on October 29, 1923, judgment was entered against W. C. Lankford for the full amount of principal and interest sued for in connection with the suit mentioned in finding of fact 8, and after the execution and recordation of a deed to all the land in controversy from Rilza T. Holton to W. C. Lankford for the purpose of levy and sale, and after a levy and due advertisement, all of said tracts 1, 2, 3, and 4 were, on the 4th day of December, 1923, sold by the sheriff under this judgment and bid in by Mrs. Rilza T. Holton for the full amount of the judgment, and on December 4, 1923, a deed was executed by the sheriff to Mrs. Rilza T. Holton in accordance with said sale, which deed was ·recorded January 3, 1925 in deed records of Coffee County, Georgia." (Finding of fact 10.)

Also the examiner found as a fact that "After the agreed sheriff's sale referred to in finding of fact 10, Mrs. Mattie L. Lankford and H. L. Lankford and their tenants remained in the actual possession of all the lands in controversy, and Mrs. Mattie L. Lankford began making the agreed payments of $100 per month. On or about July 1st, or August 1st, 1924, Mrs. Rilza T. Holton refused to accept one of the monthly installments provided for in the contract referred to in finding of fact 9, and without the consent of Mrs. Mattie L. Lankford, and without other legal process, immediately began collecting the rents and utilizing the profits from tracts 2, 3 and 4. Mrs. Lankford continued to enjoy the use of and rents and profits from tract 1 until February, 1929, at

which time Mrs. Holton in the same manner took possession of this tract by herself moving upon it. Since said times Mrs. Holton and those claiming under her have enjoyed the full use and benefit of all said property, and have borne all the burdens incident to an ownership thereof." (Findings of fact 15 and 16.) The examiner found, as a matter of law, that "Because of the contract referred to in finding of fact 9, and the judgment and sheriff's sale referred to in finding of fact 10, Mattie L. Lankford is estopped from claiming a good prescriptive title to the land, the title to which she seeks to have registered in her name, and also from claiming that the B. H. Tanner loan deed referred to in finding of fact 2 is void for usury. The contract evidenced by the agreements referred to in finding of fact 9, because of the facts set out in findings of fact 16 and 17 was breached by petitioner, and she thereby waived strict compliance on the part of the other party or parties bound thereby, and her subsequent acts of possession were that of one holding title to secure the payment of a debt, and the rents and profits from the property were by the law applied towards satisfying the obligations of Mattie L. Lankford under said contract."

The contracts and agreements referred to in the examiner's findings were an agreement and option contract entered into between Mrs. Holton and Mrs. Lankford on October 27, 1923, while the foreclosure suit was pending against Mrs. Lankford's husband. There were two contracts, one which we will call the "settlement contract" signed by both parties and approved by W. C. Lankford, and second, the "option agreement" signed only by Mrs. Holton. The settlement contract set out the amount that was admitted to be due on the security deed to be the sum of $31,872, and it was agreed that judgment should be taken for this amount; that the lands should be sold at sheriff's sale, and Mrs. Holton would bid the full amount of the execution; and if she was the successful bidder the option contract would be delivered to an agent of Mrs. Lankford. It was agreed further, if Mrs. Lankford bid on the property up to an amount within $100 of the execution, and if same was knocked off to her at less than the amount of the execution, "that the party of the first part (Mrs. Holton) shall credit her said execution down to the amount of $15,000, and shall allow the party of the second part seven years in which to pay the balance of $15,000. The said principal sum of $15,000 to draw in-

terest at 6% per annum payable annually, and the said party of the second part to secure said indebtedness to the party of the first part by a security deed on the premises so bid in." It was agreed that if any third party bid in the property in an amount greater than the full amount of the execution, and upon such sum being paid to Mrs. Holton, Mrs. Lankford would be entitled to all sums in excess of $15,000. It was further agreed that if either Mattie L. Lankford or her husband, W. C. Lankford, prevented the sale, or prevented any future efforts to sell the property under execution, then Mrs. Lankford would forfeit all rights under the settlement contract, and there would be no delivery of the option contract. This settlement contract was not in evidence on the first hearing before the examiner, but apparently had been forgotten by the parties, and the original was not found until sometime early in January, 1939, it being found in the office of one of the attorneys who had represented Mrs. Holton in the making of the settlement contract in 1923. The option contract was offered in evidence on the first trial, at which time Mrs. Lankford's husband denied that his wife had anything to do with its execution. Mrs. Lankford pleaded a lack of knowledge of the same. It appears from the record that after the settlement agreement was entered into, judgment was rendered in favor of Mrs. Holton, and at the sheriff's sale Mrs. Holton bid in the property for the full amount of the execution, and the option was delivered to Mrs. Lankford's agent. The option contract provided that Mrs. Lankford should have the right to purchase the lands in dispute from Mrs. Holton for $15,000, with the privilege of paying the same in seven years at the rate of $100 per month, and the balance at the end of the seven-year period. The rents were to be collected by Mrs. Lankford's agent and applied on the purchase-price. It was agreed that Mrs. Lankford was to pay all outstanding and future taxes and paving assessments, as well as to provide insurance on the properties. Under this agreement Mrs. Lankford paid six or seven hundred dollars to Mrs. Holton, but never did pay any of the taxes or paving assessments as required by the option, and in July or August, 1924, Mrs. Holton refused to accept a monthly payment of $100, and took possession of three of the tracts in 1924, and in 1929 took possession of the fourth tract.

Although on the first hearing Mrs. Lankford denied that she

had ever signed the option contract or knew anything about it, and a consent order was entered by the examiner finding that such contract was of no force or effect, the examiner treated the option contract as open and subsisting. On the first appearance of this case here, on motion for a rehearing, the plaintiff's counsel made some reference to the option contract, and Mr. Justice Jenkins, speaking for this court, pointed out: "With regard to the option, this court saw no reason to deal with it in the original opinion, for the reason that the movants, although pleading it in their petition, had themselves expressly abandoned it." (187 *Ga.* 110.) The option contract was not signed by Mrs. Lankford, and in her answer she denied any knowledge of it. Further, in the motion for rehearing Justice Jenkins said: "There is no reference to payment under any option, such as might have contradicted the previous denials or testimony of the witness relative thereto. There was no proof that at the time of the option transaction or at any other time *the witness was general agent of the defendant, or special agent authorized to act for her with reference thereto.*" (Italics ours.)

On the last hearing before the examiner the plaintiffs, by amendment, set up the settlement contract of October, 1923, signed by Mrs. Holton and Mrs. Lankford, and in response to this amendment Mrs. Lankford admitted that she executed the settlement contract, and that these matters were handled entirely by her husband, W. C. Lankford, who was her only attorney. On the trial before the examiner on the last hearing it appeared, without dispute, that Mrs. Lankford's husband, W. C. Lankford, represented her as her attorney and agent in negotiating the settlement contract and the execution of the option contract; that after he had negotiated the contract with Mrs. Holton and her attorneys, upon the submission of the contract to her by her husband, she signed the same. Mrs. Lankford did not appear as a witness *in person* or by deposition as to these matters, and the testimony in her behalf as to all these transactions was by her husband, W. C. Lankford. Not until nine years after these proceedings were filed did Mrs. Lankford raise the question of usury. From the evidence before the examiner, we think that he was authorized in finding that W. C. Lankford in the execution of this settlement agreement and option contract was acting as agent for his wife, and she was

chargeable with whatever information and knowledge he had. From the evidence it appears that W. C. Franklin at the time of the foreclosure suit knew of the claimed defense of usury in the Tanner loan, but did not divulge the facts, but while acting on behalf of his wife concealed them with full knowledge that the settlement agreement provided for the settlement of an indebtedness of more than $31,000 for $15,000, and made no effort to defeat the action on the ground of usury, but negotiated a contract whereby his wife agreed to purchase the property for $15,000, and saved himself from a deficiency judgment. We are of the opinion that his knowledge of these matters was her knowledge. A principal is bound by all the representations made by his agent, "and also by his wilful concealment of material facts, although they are unknown to the principal, and known only by the agent." Code, § 4-307. "A fraud may be committed by acts as well as words; and one who silently stands by and permits another to purchase his property without disclosing his title is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser." § 105-304. "Concealment of material facts may in itself amount to a fraud." (3) Where one party knows that another is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silent." § 96-203. "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." § 38-409. "In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." Code, § 38-116.

Under these principles and the evidence as to the circumstances under which Mrs. Lankford entered into the settlement contract and received an option contract to purchase the four tracts of land involved in this case, and by reason of the silence of Mrs. Lankford's husband, who represented her as agent and attorney, to make the claim of usury on or before the contracts were made and the foreclosure sale had, we think that the examiner was authorized in finding that Mrs. Lankford was estopped from claiming that Mrs. Holton's prescriptive title was void as based upon a deed infected with usury. "Where a party has stood by and allowed a mortgage

to be foreclosed for its full amount, she can not, in a subsequent litigation, go behind the judgment and attack the original contract on account of usury therein, but is bound by the judgment; she not alleging that there was any fraud, accident, or mistake in procuring it, or that, when it was rendered, she had no knowledge of this usury; and it does not appear on the face of the judgment that there was usury therein." *McLaws* v. *Moore,* 83 *Ga.* 177 (9 S. E. 615). "Under the old law, if the debt secured by the deed was reduced to judgment, without any plea of usury by the debtor or with an adverse verdict and judgment upon such plea, the debtor and his creditors, even holding judgments, in the absence of fraud, want of jurisdiction, or other equities, were estopped from attacking the deed for usury." *Lankford* v. *Holton,* 187 *Ga.* 99 (supra).

7. On the first appearance of this case here, on the evidence then before the court we held that Mrs. Lankford, by reason of more than seven years adverse possession under color of title, appeared to have acquired a good prescriptive title. The finding of the examiner on the last hearing that she did not have such good prescriptive title as to authorize the registering of the three and one-half tracts in her name, if sustained, must be upon the ground that by her conduct she waived and abandoned whatever rights she might have had by a previous adverse possession of more than seven years. The general rule is that where title to land is acquired by seven years adverse possession under color of title, such title can not be lost by the holder thereof by abandonment. *Callaway* v. *Beauchamp,* 140 *Ga.* 207 (78 S. E. 846); *Tarver* v. *Deppen,* 132 *Ga.* 798 (65 S. E. 177, 24 L. R. A. (N. S.) 1161). Unless, as held in the latter case, "such abandonment brings about an estoppel, or unless the title to the abandoned property afterwards goes into another by reason of such other's adverse possession."

This court held, in *Williamson* v. *Mosley,* 110 *Ga.* 53 (35 S. E. 301), that where one had obtained prescriptive title by adverse possession it could be lost where the conduct of the owner was such that an abandonment of the premises could be legally construed as an admission of a better outstanding title. The court quoted a statement made in *Vickery* v. *Benson,* 26 *Ga.* 582, that "It does not thence follow that in every case seven years adverse possession, under color of title and claim of right, gives a title to the occupant. He may, at or after the seven years, *abandon* the land. If

he does so, the previous possession counts for nothing. The abandonment is an admission that there is a better outstanding title, and that the possession was, while it lasted, really in subordination to that title." We held in *Shackelford* v. *Rutledge,* 160 *Ga.* 688 (128 S. E. 794), that where A without objection permitted B to use and occupy the premises in accordance with the terms of a trust deed for about eight years, such acquiescence amounted to a waiver of any previous prescriptive rights which A might have acquired. We find the general rule stated in 2 C. J. S. 718, § 151, as follows: "A contract to purchase land adversely occupied entered into between an adverse claimant and the true owner may constitute such a recognition of the owner's title by claimant as fatally to interfere with the continuity of his adverse possession." Though a vendee in contract to purchase land, at the time of the contract was already in possession of the land and claiming ownership under an adverse title, is not estopped to deny the title of his vendor, an estoppel may arise by reason of a special covenant in the contract or other special equity standing as a sufficient foundation for it. *Yerby* v. *Gilham,* 147 *Ga.* 342 (94 S. E. 246). In this case, at the time the settlement agreement and option contract was entered into in October, 1923, Mrs. Mattie Lankford recognized, first, that there was a lawful indebtedness against this property in the amount of more than $31,000; and second, that the property which was security for the payment of the debt, and which she now claims to be hers by reason of adverse possession, was subject to be foreclosed and sold in order to pay said indebtedness; and third, that if the property was purchased by Mrs. Holton, Mrs. Lankford could purchase the same under the terms of the option contract. Mrs. Lankford at that time raised no question about her rights under the claim of her prescriptive title, but by her conduct expressly recognized the right of Mrs. Holton to foreclose her security deed, and permitted her to purchase the property; and after such sale, by her own agreement, Mrs. Lankford's rights in the property were those provided for under the option agreement, which was one holding a contract right as the purchaser of real estate, and not as owner under a prescriptive title. The evidence warranted the finding that shortly after the sale of the property she permitted Mrs. Holton to take exclusive possession of three of the tracts, and subsequently the fourth tract, without taking legal steps to regain her

possession. From the date when the property was bought in at the foreclosure sale until the time of the trial before the examiner, Mrs. Lankford did not pay any taxes, and not until her pleadings were filed in this proceeding did she make any claim of title by adverse possession. Under the evidence before the examiner on the last hearing, we are of the opinion that he was authorized in finding that by her conduct Mrs. Lankford had impliedly admitted title to the tracts to be in Mrs. Holton. The findings of the examiner, both as to fact and law, that title to the three and one-half tracts was in Mrs. Holton and the intervenors, are sustained.

8. We now come to a consideration of the bills of exceptions in cases 14335 and 14336. The examiner found as a matter of law that Mrs. Holton, in July or August, 1924, by taking possession of the three tracts, breached the settlement contract and the option agreement, "and she thereby waived strict compliance on the part of the other party or parties bound thereby, and her subsequent act of possession was that of one holding title to secure the payment of a debt, and the rents and profits from the property were by the law applied towards satisfying the obligations of Mattie L. Lankford under said contract," and that the equitable title to the 3½ tracts "is vested in Mattie L. Lankford and the legal title to this same land is vested in Rilza T. Holton and those claiming under her, subject to be divested upon complete satisfaction of the obligations contained in the contract mentioned in findings of fact 9" (findings of law 12 and 13). Mrs. Holton and intervenors excepted to this finding as "contrary to law and unauthorized by the evidence, and without evidence to support it." The court overruled these exceptions. In separate decrees involving 3½ tracts, the court decreed legal title in Mrs. Holton and intervenors, "subject to divestment upon the complete satisfaction by Mattie L. Lankford of the obligations contained in the contract made by her with Rilza T. Holton, mentioned in finding of fact number 9 in the final report of the special examiner; that is, the contract evidenced by the agreement recorded in the office of the clerk of the superior court of Coffee County, Georgia, October 10th, 1940, in deed book 60, pages 605 and 606, and a copy of which is attached to the amendment of October 8, 1940, to the plaintiff's petition and the 'escrow contract and option' recorded in said clerk's office, Coffee County, Georgia, in deed book 43, pages 91

and 92, and a copy of which is attached to plaintiffs' original petition and which contract as so evidenced was consented to by W. C. Lankford." The plaintiffs in their bill of exceptions generally and specially assigned error on the portion of the decrees we have just quoted.

Notwithstanding the examiner's order, which was entered in open-court and with the consent of counsel for the parties, on the first hearing, declaring the option contract of no force and effect (187 *Ga.* 94), the examiner, on the last hearing, apparently based his finding of equitable title in Mrs. Mattie L. Lankford upon the assumption that the option was subsisting and enforceable as a contract of purchase. Whether or not the examiner's consent order, which has never been set aside, put the option forever out of the case (see *Ellis* v. *Ellis,* 161 *Ga.* 360 (2), 130 S. E. 681; *Forrester* v. *Frizzell,* 35 *Ga. App.* 562 (2), 134 S. E. 182; *Mayor &c. of Savannah* v. *Monroe,* 22 *Ga. App.* 190, 95 S. E. 731); Code, § 38-114), the evidence shows that Mrs. Lankford abandoned any rights that she may have had under it. The option was signed in 1923. It called for the payment by Mrs. Lankford of $15,000 at $100 per month, plus outstanding and future taxes, paving assessments, and fire-insurance premiums, and the balance at 6 per cent. interest at the expiration of seven years. At most only seven $100 monthly payments were made. No taxes, paving assessments, or insurance premiums, as required by the option, have ever been tendered or paid by Mrs. Lankford. Mrs. Holton took and has held possession of tracts 2, 3, and 4 since 1924, and in 1929 took possession of tract 1, and since taking possession has borne the expense of the property. There is evidence in the record that Mrs. Holton refused to accept the $100 payment, and took possession because Mrs. Lankford had not complied with other obligations contained in the option. Mrs. Lankford, until the last hearing before the examiner, beginning in 1940, denied the existence of the option, made no claim under it, or of any tender except in 1924, and then only the monthly installment of $100, and has made no effort to enforce it.

Assuming, but not deciding, that the examiner was authorized to find that Mrs. Holton in 1924 breached the option by refusing to accept the tender of the $100 monthly payment and by taking possession, Mrs. Lankford was not released from her ultimate ob-

ligations required by the option, nor was she deprived of her right to insist upon performance by Mrs. Holton. *Smith* v. *Georgia Loan, Savings &c. Co.,* 113 *Ga.* 975 (39 S. E. 410). By its terms the option was to be discharged by specified payments, and upon its expiration date in 1930 the balance of the purchase-money was to be paid. Mrs. Lankford did not tender either the purchase-money, the interest, taxes, paving assessments or fire-insurance premiums required by the option, upon the expiration date or at any other time, nor did she demand an accounting, or make any effort to enforce the option contract; but some years thereafter in her pleadings she denied its existence and validity. The option contract, among other things, provided that if at the end of seven years from its 1923 date, the balance of the purchase-money was not immediately paid, "this option to purchase shall become void," and that any payments made by Mrs. Lankford were to be applied as rents.

Where an option contract is breached by the optionor, the optionee can not stand silently by for a long number of years, see the optionor take possession, assert and bear the burdens of ownership, make substantial improvements, and then, after having acquiesced in the breach, successfully claim rights under an option contract that had been openly abandoned by the parties thereto. In her answer filed in 1928 Mrs. Lankford merely denied the right of Mrs. Holton to register title, and by a series of amendments beginning in 1937 she claimed the right to have title to 3½ tracts registered in her name by reason of prescription and on the plea that Mrs. Holton's chain of title was infected with usury. If Mrs. Lankford relied for registration on legal title to 3½ tracts, that contention has been settled adversely to her by the foregoing rulings upon her main bill of exceptions in this case, 14333. If she relied on equitable title or interest by reason of the settlement agreement and a claimed breach of the option contract, her claim is barred by acquiescence in the breach and by abandonment of any claim thereunder and by laches. Code, § 37-119; *Citizens & Southern National Bank* v. *Ellis,* 171 *Ga.* 717 (3) (156 S. E. 603).

The evidence in this case does not support the examiner's finding of equitable title to 3½ tracts in Mrs. Mattie L. Lankford, and the exceptions of law to this finding should have been sus-

tained. The court erred in approving this finding, and in entering decree to this effect. Direction is given, that, on return of the remittiturs in this case to the court below, an order be entered sustaining the exceptions to the examiner's findings of law numbered 12 and 13, and that the court strike from the decree all provisions which grant an equitable title to Mattie L. Lankford and all provisions making legal title subject to divestment upon performance of any obligation by Mrs. Mattie L. Lankford, referred to in the decrees. Code, § 6-1610; *United States Fidelity &c. Co.* v. *Clarke,* 187 *Ga.* 774 (2 S. E. 2d, 608).

We have examined all the other assignments of errors in the main bill of exceptions (14335), and find no reversible error in the rulings complained of.

9. The plaintiffs assign error upon the failure of the court to sustain exceptions of law and fact to the examiner's report which found legal title to a one-half undivided interest in tract 4 to be in the named heirs of H. L. Lankford. When this case was here the first time (187 *Ga.* 94), this court held that the evidence then before the court demanded a finding for the registration of title in the heirs of H. L. Lankford to an undivided half interest in tract 4. The evidence before the examiner, as it affected the rights of the heirs of H. L. Lankford, being on the last hearing substantially the same as it was when the case was here the first time, the ruling of this court then made became the law of the case. *Fidelity Deposit Co.* v. *Nisbet,* 119 *Ga.* 316 (3) (46 S. E. 444). There was no error in so registering the title to an undivided half interest in tract 4 in the named heirs of H. L. Lankford.

*Judgment affirmed on the main bill of exceptions in Lankford* v. *Holton* (14333); *cross-bill* (14334) *dismissed.*

*Judgment affirmed in part and reversed in part, with direction, on the main bill of exceptions in Holton* v. *Lankford* (14335); *cross-bill* (14336) *dismissed. Bell, P. J., and Jenkins, Grice, Duckworth, and Atkinson, JJ., concur.*