25316.   COHEN v. GLASS et al.

FRANKUM, Justice.   Sheldon B. Cohen, a stockholder in Peachtree Medical Building, Inc., brought an action against the corporation, its president, J. Wendell Glass and other stockholders named in the complaint, seeking to restrain the issuance of shares of stock to certain of the named individual defendants pursuant to stock options which allegedly had been previously granted to the defendants in violation of the plaintiff's preemptive rights guaranteed to him under the provisions of Section 1 of the Act approved February 15, 1952 (Ga. L. 1952, pp. 198, 199; *Code Ann.* § 22-1831.1) which Act added a new "Section 12A" to the Corporation Act of 1938 (Ga. L. 1938, pp. 214, 227). The judge of the superior court, before whom the case was heard, after hearing oral testimony and receiving voluminous documentary evidence, passed an order denying the relief prayed for and dismissing the complaint on the ground that the plaintiff was barred by laches

from securing injunctive or other equitable relief. The appeal here presents the sole question of whether the judge of the superior court before whom the case was heard was authorized by the evidence adduced before him, in the exercise of his sound discretion, to find that the plaintiff was guilty of laches. His decision will not be disturbed unless it is so clearly wrong as to amount to an abuse of discretion. *Mountain Manor Co. v. Greenoe,* 205 Ga. 619, 621 (54 SE2d 629).

The evidence authorized the judge to find that the corporation in question was organized by about 16 individuals in 1960, the charter having been granted on August 15, 1960. The charter did not deny preemptive rights. The plaintiff was not one of the original incorporators but became a stockholder on March 9, 1962. When he purchased his stock he was required to pay interest on the purchase price of the stock at the rate of 8% per annum from December 31, 1960, to the date it was paid for. The original charter did not authorize the issuance of debentures and stock options but it was amended in January 1963 pursuant to a resolution passed by the stockholders in July 1962 so as to authorize the issuance of options to purchase the corporation's stock "to such persons and upon such terms and conditions, for such price and consideration as the board of directors may authorize upon the approval of the majority of the stockholders." No resolution or vote of the stockholders authorizing the issuance of stock options or fixing the terms therefor was ever taken by the stockholders after the amendment of the charter. However, the judge was authorized to find that stock options dated December 31, 1962, were issued to the individual defendants.

In April 1963 the plaintiff and the defendant corporation entered into a buy and sell agreement limiting his right to dispose of his shares of stock in the corporation. (Such an agreement was entered into between the corporation and all other stockholders.) This agreement provided, among other things, for the redemption of the stock by the corporation in the event of the death of the stockholder, said agreement being funded by an insurance policy currently taken out by the corporation. This agreement also embodied, among its other terms, provisions relating to the evaluation and redemption of stock options. The plaintiff, on cross examination, ad-

mitted affixing his signature to this agreement. He thereby also admitted that he acquired knowledge of the existence, or potential existence, of stock options at the time he entered into this contract. In September 1965 he wrote a letter to the then president of the corporation in which he suggested as a part of the agenda for an upcoming special called meeting of the stockholders that "plans for redemption of 8% debentures which carry stock option" should be presented to the stockholders, thus apparently acknowledging the existence of such stock options. However, the plaintiff took no action to obtain for himself, at the hands of the directors and stockholders, the same privileges, that is, the issuance of debentures and stock options to himself, but almost four and one-half years after he is chargeable with having notice of the existence of such stock options, brought this action in which he merely contends that the stock options acquired by the defendant stockholders in December 1962 should be declared void and that no stock should be issued pursuant thereto. In the meantime, the corporation had proceeded to expand its plans for its building, enlarging it by the addition of two floors to the originally planned structure, and had incurred additional large obligations and expenses on the basis of the commitment of the individual defendant stockholders to the corporation.

We think that these facts authorized the trial court to apply the equitable doctrine of laches to the plaintiff's complaint and to dismiss the same. The plaintiff contended in his testimony on the trial of the case that one of the reasons why he did not sooner take action to have the stock options canceled was because he did not understand the meaning of the term and therefore did not know what a stock option was. However, he did not show any reason why a simple inquiry would not have revealed to him the meaning of the term. "If by negligence one voluntarily remains ignorant of a fact materially affecting his interest and subsequently loses a right or property, he should not expect a court of equity to do that for him which he refused to do for himself." *McCullough v. Kirby*, 204 Ga. 738, 744 (51 SE2d 812). See also, in this connection: *Manget Realty Co. v. Carolina Realty Co.*, 169 Ga. 495, 504 (150 SE 828), and *Hutchinson v. King*, 192 Ga. 402, 403 (15 SE2d 523). "Notice sufficient to excite attention and put a party on inquiry shall be notice of every-

thing to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of the parties." *Code* § 37-116. Clearly, the trial judge was authorized to find from the evidence which we have outlined above that the plaintiff here was put upon notice of sufficient facts to excite inquiry with reference to the stock options as early as April 1963. His failure to take any action with respect thereto until August 1968 justifies a presumption against the existence or validity of the right which he seeks to assert, or justifies the presumption that if he ever possessed such a right it has been abandoned or waived or has been satisfied. *Citizens & Southern Nat. Bank v. Ellis,* 171 Ga. 717, 733 (156 SE 603); *Bryan v. Willingham-Little Stone Co.,* 194 Ga. 563, 567 (22 SE2d 40). Furthermore, to require the defendants to rescind the stock options and the corporation to repay funds invested in it by the individual defendants manifestly might work great harm to the corporation where, as the trial court was authorized to find, the corporation has incurred extensive and large obligations based upon the commitment made by the various individual defendants to invest additional sums in the enterprise, and where it appears that the issuance of the eight percent debentures coupled with the stock options of which complaint is made in this suit, was an integral part of the plan for financing the two additional floors and that such debentures, though later issued, were in fact issued in exchange for the investment of those funds, and where contracts with third parties for the additional construction to be financed thereby have been fully consummated. The trial court did not err in rendering the judgment appealed from.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 15, 1969—DECIDED SEPTEMBER 11, 1969—
REHEARING DENIED NOVEMBER 6, 1969.

*Arnall, Golden & Gregory, Elliott H. Levitas, James E. Dorsey,* for appellant.

*Paul L. Hames, Robert G. Young, Heyman & Sizemore, Arnold, Shulman, Shulman & Alembik, Aaron I. Alembik,* for appellees.